OMNI HOLDING and DEVELOPMENT CORP.,
Appellant/Cross-Appellee *v.* C.A.G. INVESTMENTS, INC.,
Appellee/Cross-Appellant

06-1136                                    258 S.W.3d 374

Supreme Court of Arkansas
Opinion delivered June 7, 2007

*Paul N. Ford*, for appellant/cross-appellee.

*Fogleman & Rogers*, by: *Joe M. Rogers*, for appellee/cross-appellant.

ANNABELLE CLINTON IMBER, Justice. This appeal arises out of land and loan transactions involving Appellant Omni Holding and Development Corp. ("Omni") and Appellee/Cross-Appellant C.A.G. Investments, Inc. ("C.A.G."). In addition to Omni and C.A.G., other individuals or entities relevant to this appeal are Kim Crockett ("Crockett"), Omni's current president and majority shareholder; Bob Herren ("Herren"), Omni's former president and majority shareholder; Tom Papachristou ("Papachristou"), Omni's general manager; Sherlee Despot ("Despot"), C.A.G.'s president and sole shareholder; and the Gregory Despot Children's Trust ("Trust"),

of which Despot is a beneficiary. For its appeal, Omni raises three points of error, while C.A.G. asserts one point on cross-appeal. We find no error and affirm the judgment of the circuit court.

In 1993, Herren and Papachristou met in Shreveport, Louisiana, through a lawyer who represented them both. The men developed a business plan whereby Herren would provide financing and facilities for a crop-dusting service and a farm-equipment export business to be run by Papachristou. Although the business, Omni, was incorporated by Herren in Louisiana, it was to be located in Crittenden County, Arkansas. Subsequently, Herren persuaded Despot, with whom he lived in Shreveport, to use money from her personal funds, bank loans, and Trust funds to purchase land in Crittenden County. She was promised a 10% rate of return on her investment. With Herren's assistance, Despot organized C.A.G. as a Louisiana corporation and, in January 1994, C.A.G. purchased an 80-acre tract of land outside of Marion, Arkansas, to serve as Omni's headquarters. In lieu of rent, Despot, Herren, and Papachristou agreed that Omni would pay the taxes and insurance on the land until the business could afford to make rental payments. Additionally, C.A.G. purchased a home for Papachristou and Crockett, his girlfriend, who was also employed by Omni. Over the next several years, C.A.G. intermittently advanced funds to Omni.

On December 3, 1997, Despot executed a warranty deed from C.A.G. to Crockett, conveying the 80-acre tract of land for the purchase price of $50,000, which sum was provided by Papachristou's father. Prior to recording the deed, Papachristou requested that Herren secure additional financing from Despot and C.A.G. for Omni's export business. C.A.G. refused the request for additional financing unless it owned the land. Thus, on February 18, 1998, C.A.G. wired $50,000 to Omni, and Crockett executed a warranty deed to C.A.G., conveying the land back to C.A.G. Both deeds were recorded on the same day, February 19, 1998.

In order to consolidate Omni's outstanding indebtedness to C.A.G., Herren, in his capacity as president of Omni, prepared and signed a promissory note on September 15, 1998, in favor of C.A.G. in the sum of $175,000. The note was secured with an aircraft owned by Omni. One year later, Omni executed a bill of sale in favor of C.A.G., conveying airplane hangars, which had been built on the 80-acre tract, thereby securing title to the improvements in C.A.G.

On March 2, 2000, Omni borrowed $150,000 from Textron Financial Corporation ("Textron"), which loan was personally guaranteed by Despot. The $150,000 note was also secured by the identical aircraft that secured the earlier $175,000 note from Omni to C.A.G.

Omni's financial difficulties continued over the next three years, resulting in the deterioration of the business relationship among the parties. In late summer 2003, Despot and Herren learned that Omni was contemplating bankruptcy and that Papachristou was out of the country, in Greece. Upon becoming aware of that information, Despot and Herren promptly traveled to Arkansas and discovered that the aircraft designated as security on both the Textron and C.A.G. notes had crashed in 2002. They also found out that the insurance proceeds payable to C.A.G., Omni, and Textron as loss payees, totaling $233,500, had been deposited into Omni's bank account on May 15, 2002, without the endorsement of either C.A.G. or Textron. In November 2003, C.A.G. demanded that Omni immediately remove all personal property it owned or possessed from the real property owned by C.A.G. and to surrender possession of the real property.

As a result of Omni's refusal to comply, C.A.G. filed a complaint against Omni on December 18, 2003, asserting that Omni was in possession of real property owned by C.A.G. and that the property was being unlawfully detained. Following a hearing, the circuit court entered an order on June 22, 2004, stating that Omni had committed an unlawful detainer of the property and that C.A.G. was entitled to a writ of possession of the property without the requirement of posting a bond. Omni requested permission to post bond and remain in possession; however, it did not post the required $50,000 cash bond and $550,000 corporate surety bond by July 30, 2004, nor did it vacate the premises. In addition to its failure to vacate, equipment remained on the property, most of which had been "stripped," and Papachristou continued to reside on the premises.

C.A.G. amended its complaint, seeking a judgment for the amount due and owing on the September 15, 1998 promissory note and a finding of abandonment with regard to Omni's personal property. That same day, C.A.G. filed a petition for contempt, asserting that Papachristou, with Omni's permission, willfully remained on the premises and authorized other persons to remain on the premises, in violation of the court's orders. The petition requested that the court find Papachristou and Omni in contempt.

Omni filed a counterclaim for quiet title, asserting that Crockett signed and delivered to C.A.G. a deed purportedly conveying the real property to C.A.G., but that Omni did not intend to vest title in C.A.G.

At trial, testimony elicited early in the proceedings established that C.A.G.'s corporate charter had been revoked in Louisiana in 2000. Omni moved to dismiss C.A.G.'s complaint, claiming that C.A.G. did not have standing to sue or defend the counterclaim. On November 17, 2004, C.A.G. filed a response, asserting that its corporate charter had been reinstated in accordance with Louisiana law, effective November 4, 2004. Two days later, C.A.G. filed its second amendment to the complaint, alleging that, under Louisiana law, the certificate of reinstatement was retroactive and the charter and articles of incorporation continued in existence as though the revocation had never occurred. The circuit court denied Omni's motion to dismiss, finding that although C.A.G. lacked standing at the time of the filing of its original complaint, C.A.G.'s corporate status had subsequently been cured.

Ultimately, the case was tried and, on May 30, 2006, the circuit court entered its order and judgment, finding in pertinent part as follows: (1) C.A.G. was the record fee simple title owner of the land and that all improvements and fixtures were quieted in C.A.G.; (2) Omni's claim to rescind and reform C.A.G.'s title into a mortgage and quiet title in Omni was denied and dismissed; (3) C.A.G.'s claim that Omni was indebted to it under the terms of a promissory note, or was otherwise liable in debt to it, was denied and dismissed; (4) Omni and Papachristou were in contempt for failing to vacate the premises after the court awarded possession to C.A.G.; and (5) Omni had abandoned all personal property it left on the premises following its failure to post the requisite bond to retain possession.

Omni filed a motion for a new trial, which was deemed denied in the absence of a ruling by the circuit court. Ark. R. App. P. – Civil 4(b)(1) (2007). Omni timely appealed and C.A.G. cross-appealed on the issue of the circuit court's denial and dismissal of its claim under the promissory note. This appeal involves an issue of first impression; thus, our jurisdiction is proper pursuant to Ark. Sup. Ct. R. 1-2(b)(1) (2007).

In bench trials, the standard of review on appeal is not whether there is substantial evidence to support the finding of the circuit court, but whether the judge's findings were clearly erro-

neous or clearly against the preponderance of the evidence. *Williams v. Wayne Farms, LLC*, 368 Ark. 93, 243 S.W.3d 316 (2006). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *Id.* Facts in dispute and determinations of credibility are within the province of the fact-finder. *Id.*

For its first point on appeal, Omni argues that the circuit court erred in denying its motion to dismiss for lack of standing because C.A.G.'s Louisiana corporate charter had been revoked at the time it filed the original complaint. Omni first cites Ark. Code Ann. § 4-27-1502, also known as the Arkansas Wingo Act, which provides that "[a] foreign corporation transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority." Ark. Code Ann. § 4-27-1502 (Supp. 2005). Additionally, Omni relies upon *S & L Painting Contractors, Inc. v. Vickers*, 267 Ark. 109, 589 S.W.2d 196 (1979), where this court held that the Wingo Act barred a Mississippi corporation from recovering for work done in Arkansas for an Arkansas resident because the foreign company was not authorized to do business in this state. Omni's argument on this point is without merit.

Arkansas Code Annotated § 4-27-1501(b) provides that the following activities, among others, do not constitute "transacting business" for purposes of the Arkansas Wingo Act:

(7) Creating or acquiring indebtedness, mortgages, and security interests in real or personal property;

(8) Securing or collecting debts or enforcing mortgages and security interests in property securing the debts;

(9) Owning, without more, real or personal property[.]

Ark. Code Ann. § 4-27-1501 (Repl. 2001). We agree with C.A.G. that the above-quoted statutory exceptions to the requirement of a certificate of authority apply here. C.A.G.'s activities in Arkansas involved the creation, securing, and collection of debts, as well as the ownership of real and personal property. Thus, C.A.G. was not "transacting business" in Arkansas and its failure to obtain a certificate of authority did not prevent C.A.G. from filing suit in this state.

Next, Omni claims that C.A.G. lacked the standing to sue because its corporate charter had been revoked. *See Schmidt v. McIlory Bank & Trust*, 306 Ark. 28, 811 S.W.2d 281 (1991). For

further support, Omni cites *HRR Arkansas, Inc. v. River City Contractors, Inc.*, 350 Ark. 420, 87 S.W.3d 232 (2002), where we held that a corporation lacked the capacity to sue when it ceased to legally exist after revocation of its corporate charter for failure to pay franchise taxes. We also noted that there was nothing in the record to indicate that the corporation had ever attempted to reinstate its corporate charter. *Id.*

In the case before us, the applicable statutory provision is Ark. Code Ann. § 26-54-112, as amended by Act 522 of 1999. The amended version of section 26-54-112, which became effective as of July 30, 1999, states in pertinent part as follows:

> (a)(1)(A)(i) Any corporation whose charter or permit authority to do business in the state has been declared forfeited by proclamation of the Governor or the Secretary of State may be reinstated to all its rights, powers, and property.
>
> *(ii) Reinstatement shall be retroactive to the time that the corporation's authority to do business in the state was declared forfeited.*
>
> . . . .
>
> (c)(1) If the original corporate charter, permit, or authority was issued by an official other than the Secretary of State, the official shall reinstate the corporation upon the corporation's filing with the official the receipt of the Secretary of State showing payment of all amounts due, as provided in subsection (a) of this section.
>
> *(2) Thereafter, the corporation shall stand in all respects as though its name had never been declared forfeited.*

Ark. Code Ann. § 26-54-112 (Supp. 2005) (emphasis added). Under the plain language of this statute, reinstatement of the corporate charter shall be retroactive to the date of its revocation. Similarly, Louisiana's reinstatement statute, La. Rev. Stat. Ann. § 12:163, provides for the retroactive reinstatement of corporate charters. *Acadian Cypress & Hardwoods, Inc. v. Piazza*, 664 So. 2d 138 (La. 1995).

Omni, nonetheless, cites a decision by this court that supports a contrary conclusion. *See Sulphur Springs Recreational Park v. City of Camden*, 247 Ark. 713, 447 S.W.2d 844 (1969). That precedent, however, is no longer controlling because the statute at issue in the *Sulphur Springs* case was not the amended version of

section 26-54-112 enacted by the General Assembly in 1999. In fact, this is the first time our court has been called upon to interpret Act 522 of 1999, as codified at Ark. Code Ann. § 26-54-112 (Supp. 2005).

■ Likewise, our decision in *HRR Arkansas, Inc., supra,* is distinguishable on its facts. In that case, there was nothing to indicate that the corporation had ever attempted to reinstate its corporate charter. In contrast, it is undisputed that the plaintiff corporation in this case, C.A.G., reinstated its corporate charter in Louisiana, which reinstatement was retroactive to the date of revocation under both Arkansas and Louisiana law. Pursuant to section 26-54-112, the restoration of C.A.G.'s corporate status vested it with continuous existence as though the revocation of its charter had never occurred. Accordingly, we affirm the circuit court's denial of Omni's motion to dismiss for lack of standing.

For its second point on appeal, Omni contends that the circuit court erred in denying it relief on its counterclaim seeking reformation and quiet title. Specifically, Omni asserts that the February 18, 1998 deed conveying the 80-acre tract of land to C.A.G. is a result of mutual mistake. In Arkansas, it is well settled that equity will reform a deed upon clear, convincing, and decisive evidence that a mutual mistake has been made in the drafting of the instrument. *Hope v. Hope,* 333 Ark. 324, 969 S.W.2d 633 (1998); *Kohn v. Pearson,* 282 Ark. 418, 670 S.W.2d 795 (1984).

■ Here, Omni is precluded from arguing on appeal that the circuit court erred in denying it relief on its counterclaim seeking reformation and quiet title. The record reflects that both the December 3, 1997 and February 18, 1998 deeds were executed between C.A.G. and Crockett; Omni was not a party to either deed. One who is not a party to a contract may not obtain reformation of it. *Nichols v. Wray,* 325 Ark. 326, 925 S.W.2d 785 (1996). Thus, Omni's second point is also without merit.

For its third point on appeal, Omni makes two separate arguments. First, it asserts that the circuit court erred in ruling that Omni had abandoned personal property when the court ordered Omni to remove itself from the property. Second, Omni urges this court to overturn the circuit court's finding of contempt.

We review equity cases *de novo* on the record, and we will not reverse unless we determine that the court's findings of fact were clearly erroneous. *Taylor v. Finck,* 363 Ark. 183, 211 S.W.3d

532 (2005); *Terry v. Lock,* 343 Ark. 452, 37 S.W.3d 202 (2001). Facts in dispute and determinations of credibility are within the province of the fact-finder. *Williams v. Wayne Farms, LLC, supra.*

As to Omni's argument concerning the abandonment of its personal property, this court held in *Terry v. Lock, supra,* that the rights of a finder of property depend on how the found property is classified, with the character of the property determined by evaluating all the facts and circumstances present in the particular case. 343 Ark. 452, 37 S.W.3d 202. Additionally, we explained that

> [p]roperty is said to be "abandoned" when it is thrown away, or its possession is voluntarily forsaken by the owner, in which case it will become the property of the first occupant; or when it is involuntarily lost or left without the hope and expectation of again acquiring it, and then it becomes the property of the finder, subject to the superior claim of the owner.

343 Ark. at 460, 37 S.W.3d at 206.

With that definition in mind, we now turn to Omni's argument that it did remove some property from the location, but was forced to leave behind a considerable number of items due to the size of the items, the number of items, the difficulty in removing the items, the absence of a suitable location to place the property, the short time involved, and the non court-ordered demands placed upon it by C.A.G.'s attorney. In sum, Omni claims that at no time did it voluntarily forsake its interest in its property, and that it never relinquished its hope or expectation of again acquiring its property as it vigorously defended its position during litigation. We disagree.

According to testimony elicited from Crockett, she removed files, furniture, computers, books, and office equipment from Omni's offices. Omni also removed several pieces of large equipment from the premises. The circuit court gave Omni a period of one week to remove all of its property, but Omni failed to take full advantage of that opportunity. Instead, Papachristou traveled to Greece when he could have stayed in Arkansas and used the time to retrieve Omni's property. Based upon the facts and circumstances as reflected in the record before us, and our standard of review, which is highly deferential to the credibility findings of the trial court, we cannot say that the circuit court clearly erred in

finding that Omni abandoned the property it left on the premises after being afforded ample opportunity to accomplish its removal. In any event, with the termination of Omni's right as a lessee in a tenancy at will to remain on the property after the circuit court ordered the issuance of a writ of possession, any property left behind was abandoned. *See* Ark. Code Ann. § 18-16-108 (Repl. 2003) ("Upon voluntary or involuntary termination of any lease agreement, all property left in and about the premises by the lessee shall be considered abandoned and may be disposed of by the lessor as the lessor shall see fit without recourse by the lessee.")

For its second argument under this point, Omni challenges the circuit court's order holding Omni and Papachristou in contempt for failing to vacate the premises. Our standard of review for civil contempt is whether the finding of the circuit court is clearly against the preponderance of the evidence. *Omni Holding and Development Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, 156 S.W.3d 228 (2004). In the *Omni Holding* case we stated that,

> [c]ontempt is divided into criminal contempt and civil contempt. Criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who disobey its orders. Civil contempt, on the other hand, protects the rights of private parties by compelling compliance with orders of the court made for the benefit of private parties. This court has often noted that the line between civil and criminal contempt may blur at times.

*Omni Holding and Development Corp. v. 3D.S.A., Inc.*, 356 Ark. at 234, 156 S.W.3d at 448 (internal citations omitted).

In the case before us, Omni was ordered to either vacate the premises or post a $50,000 cash bond and a $550,000 corporate surety bond by July 30, 2004. The required bonds were never posted by Omni. Testimony elicited at trial established that Papachristou and Crockett were both present in the courtroom when the judge announced her decision on July 23, so there is no question that Papachristou was aware of the court order. The "violation or disobedience of an injunction order issued by a court having jurisdiction in the matter, when committed by a party to the injunction suit, *or by a third party having actual notice*, is a contempt of court, and is punishable as such by the tribunal issuing the order[.]" 356 Ark at 455, 156 S.W.3d at 239 (emphasis provided). "[O]ne who has full knowledge of a court order and its import cannot flout it with impunity." *Id.*

■ According to Crockett's testimony, as well as that of Janelle Carrol, a real estate agent, Papachristou had been seen on the property after Omni was ordered to vacate the premises. In fact, both women stated that Papachristou had been living on the property after the July 30 deadline. Based upon the record before us and the applicable standard of review, we cannot say that the finding of contempt by the circuit court is clearly against the preponderance of the evidence. Thus, we affirm the court's order holding Omni and Papachristou in contempt for failing to vacate the premises.

Turning now to the cross–appeal, C.A.G. argues that the circuit court erred in not awarding judgment against Omni under the September 15, 1998 promissory note. Once again, in bench trials, the standard of review on appeal is not whether there is substantial evidence to support the finding of the circuit court, but whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *Williams v. Wayne Farms, LLC, supra.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *Id.* Facts in dispute and determinations of credibility are within the province of the fact–finder. *Id.*

At issue is the $175,000 promissory note in favor of C.A.G. that was prepared and signed by Herren in his capacity as president of Omni. In a letter opinion, the circuit court found that each of the parties had failed to meet its burden of proof with respect to the actual amount owed on the promissory note or any other debts between the parties. Consequently, any claims with respect to any amounts due and owing the parties in this case were denied for failure to meet the burden of proof.

Here, first and foremost, C.A.G. does not dispute the circuit court's finding that C.A.G. did not keep a contemporaneous account of the amount owing prior to the execution of the note. C.A.G. also concedes, as the circuit court found, that Herren had a direct conflict of interest in this matter, as he was the sole shareholder and an officer of Omni at the same time he was living with Despot and advising her as to C.A.G.'s business and loans. Moreover, the record supports the circuit court's findings that *both* sides failed to properly maintain records and were unable to prove by a preponderance of the evidence the amount owed on the debt.

Finally, although there was conflicting testimony as to loans and payments, it is well settled that facts in dispute and determinations of credibility are within the province of the fact-finder. *Williams v. Wayne Farms, supra.* Accordingly, based upon the record before us and our standard of review, we cannot say that the findings of the circuit court are clearly erroneous or clearly against the preponderance of the evidence.

Affirmed on direct appeal and cross-appeal.