2010 Ark. 90

**Kim CROCKETT, Appellant,**

v.

**C.A.G. INVESTMENTS, INC., Appellee.**

No. 09–599.

Supreme Court of Arkansas.

Feb. 25, 2010.

See also 370 Ark. 220, 258 S.W.3d 374.

Paul N. Ford, Jonesboro, and Brian G. Brooks, Attorney at Law, PLLC, by: Brian G. Brooks, Greenbrier, for appellant.

Fogleman, Rogers & Coe, by: Joe M. Rogers, West Memphis, for appellee.

ROBERT L. BROWN, Justice.

This appeal involves several issues regarding the viability of a lawsuit by appellant Kim Crockett, which raises virtually the same issues as those raised in a previous lawsuit between her business, Omni Holding and Development Corp. ("Omni"), and the appellee, C.A.G. Investments, Inc. ("C.A.G."). Because we conclude that there is a counterclaim which has not been resolved, we dismiss without prejudice under Rule 54(b).

In 1993, Bob Herren and Tom Papachristou developed a plan to start a crop-dusting and farm-equipment export business, Omni. Herren was to provide the financing and facilities, and Papachristou was to run the business. Omni was incorporated by Herren in Louisiana, but it was to be located in Crittenden County. Sherlee Despot, who lived with Herren in Shreveport, Louisiana, subsequently purchased land in Crittenden County. With Herren's assistance, Despot organized C.A.G. as a Louisiana corporation, and in January 1994, C.A.G. purchased the disputed land, an 80–acre tract outside of Marion, to serve as Omni's headquarters. Additionally, C.A.G. purchased a home for Papachristou and Kim Crockett ("Crockett"), his girlfriend and instant appellant, who was employed by Omni.

In July 1997, Crockett became a minority shareholder in Omni, and at some later

point in time, she became its sole stockholder, president, and chairman of the board. It is unclear from the record exactly when that occurred, but Crockett testified that she was the sole stockholder, president, and chairman of the board of Omni in May 2005.[1]

Over the next several years, C.A.G. intermittently advanced funds to Omni. On December 3, 1997, Despot executed a warranty deed from C.A.G. to Crockett, conveying the 80–acre tract of land for the purchase price of $50,000.[2] Before recording the deed, Papachristou requested that Herren secure additional financing from Despot and C.A.G. for Omni's export business. C.A.G. refused to provide additional financing unless it owned the land. On February 18, 1998, Crockett executed a warranty deed to C.A.G., conveying the land back to C.A.G., and C.A.G. wired $50,000 to Omni. Both deeds were recorded on February 19, 1998.

Thereafter, Omni suffered numerous financial setbacks, which resulted in the deterioration of the business relationship among the parties. In late summer 2003, Despot and Herren learned that Omni was contemplating bankruptcy and that Papachristou was in Greece. In November 2003, after further investigating Omni's financial affairs, C.A.G. demanded that Omni immediately remove all personal property it owned or possessed from the land owned by C.A.G. and surrender possession of the real property.

Omni refused, and C.A.G. filed a complaint against Omni on December 18, 2003, in which it asserted that Omni was in possession of the land owned by C.A.G. and that the property was being unlawfully detained. The circuit court heard the matter and entered an order on June 22, 2004, to the effect that Omni had committed an unlawful detainer of the property and that C.A.G. was entitled to a writ of possession of the land without the requirement of posting a bond. Omni requested permission to post bond and remain in possession. It did not, however, post the required bond. Omni also failed to vacate the premises. Equipment remained on the property, most of which had been "stripped," and Papachristou continued to reside on the premises.

C.A.G. next amended its complaint and sought additional remedies for outstanding debts. C.A.G. also filed a petition for contempt against Papachristou in which it asserted that Papachristou, with Omni's permission, willfully remained on the premises and authorized other people to remain on the premises in violation of the court's orders. Omni counterclaimed to quiet title and asserted that while Crockett did sign and deliver a deed to C.A.G. purportedly conveying the land to C.A.G., she did not intend to vest title in C.A.G. Omni asserted, instead, that the $50,000 C.A.G. wired Omni was a loan and that the land in question was collateral for the loan. Crockett represented Omni as its representative at all times during these proceedings.

The case was tried, and, on May 30, 2006, the circuit court entered its order and judgment, finding and ruling in pertinent part as follows: (1) C.A.G. was the record fee simple title owner of the land, and all improvements and fixtures were quieted in C.A.G.; (2) Omni's claim to rescind and reform C.A.G.'s title into a mortgage and quiet title in Omni was denied and dismissed; (3) Omni and Papachristou were in contempt for failing to vacate the premises after the court awarded posses-

---

1. C.A.G. and Omni were involved in litigation at that time.

2. Papachristou's father provided the $50,000.

sion to C.A.G.; and (4) Omni had abandoned all personal property it left on the premises, following its failure to post the requisite bond to retain possession. Omni appealed the circuit judge's order quieting title in favor of C.A.G. In that appeal, this court held that Omni was precluded from seeking to reform the February 18, 1998 deed because Omni was not a party to the deed. *See Omni Holding and Dev. Corp. v. C.A.G. Invs., Inc.*, 370 Ark. 220, 258 S.W.3d 374 (2007). Our opinion was handed down on June 7, 2007.

On June 15, 2007, after *Omni* was decided, Crockett filed a complaint in Crittenden County Circuit Court seeking to reform the February 18, 1998 deed. She contended, as had Omni in its original counterclaim, that the land was intended to be collateral for a $50,000 loan from C.A.G. to Omni. On the same day that Crockett filed her original complaint, she filed a lis pendens which provided notice that the land in question was subject to an action to quiet title.

On August 2, 2007, C.A.G. answered the first complaint and moved separately to quash the lis pendens. On August 24, 2007, C.A.G. filed a counterclaim for tortious interference with a business expectancy based on Crockett's filing of the complaint and lis pendens. It also moved for Rule 11 sanctions.

On October 1, 2007, Crockett amended her complaint and added a claim for breach of contract. Under this theory of recovery, Crockett alleged that there was a contract between C.A.G. and herself whereby she would use the land as collateral for a $50,000 loan from C.A.G. to Omni and that C.A.G. breached this contract by not returning the land when the debt was satisfied. C.A.G. moved for sum-

mary judgment on October 11, 2007, and contended that it was entitled to judgment as a matter of law under the following theories: (1) statute of limitations; (2) waiver and estoppel; and (3) res judicata and collateral estoppel. On November 5, 2007, Crockett moved for a voluntary nonsuit of her claim to reform the deed and to quiet title to the property. An order to that effect was entered the same day. Her breach-of-contract claim remained pending.

On December 4, 2007, the circuit judge granted C.A.G.'s motion for summary judgment on the basis of collateral estoppel, res judicata, and waiver. The judge specifically declined "to rule on the other basis for summary judgment alleged by the defendant." On December 31, 2007, Crockett appealed the matter to the court of appeals. On May 2, 2008, after discovering that C.A.G.'s counterclaim was still pending, Crockett moved the court of appeals to dismiss the appeal without prejudice. On May 14, 2008, the court of appeals filed a formal order granting Crockett's motion to dismiss.

On May 13, 2008, C.A.G. moved for a voluntary nonsuit of its counterclaim in circuit court. On May 14, 2008, after the final order from the court of appeals dismissing Crockett's appeal was filed in the circuit court, the circuit judge entered an order dismissing the counterclaim without prejudice. On May 21, 2008, C.A.G. moved to certify the "final judgment, for attorneys' fees, and for Rule 11 sanctions," and on October 13, 2008, the circuit judge held a hearing on the pending issues.

On February 5, 2009, the circuit judge entered an order reaffirming its ruling granting C.A.G.'s motion for summary judgment.[3] The order also granted

---

**3.** The order specifically stated that "[O]n December 4, 2007, the court granted defendant's

Motion for Summary Judgment and dismissed plaintiff's Complaint with prejudice, on all

C.A.G.'s motions for attorneys' fees, for Rule 11 sanctions, and to strike the *lis pendens.* The order did not include a certificate authorizing an appeal pursuant to Arkansas Rule of Civil Procedure 54(b) but said that "this Order and Judgment finally and fully concludes all issues pending herein and therefore, it is a final and conclusive order and judgment and there is therefore, no need for a separate Ark. Rule of Civil Procedure 54(b) certification."[4] Crockett appealed.

There are jurisdictional matters in this appeal that first must be addressed. C.A.G. claims that Crockett's March 5, 2009 notice of appeal was untimely because she should have appealed from the December 4, 2007 order granting summary judgment. According to C.A.G., that order became final on March 14, 2008, when the circuit judge entered an order granting C.A.G.'s motion for a voluntary nonsuit of its tortious-interference counterclaim. Hence, the first issue is whether the March 14, 2008 order, in fact, operated to make the December 4, 2007 order final and appealable, as C.A.G. contends. On this threshold point, C.A.G.'s argument fails due to the fact that an outstanding issue, C.A.G.'s counterclaim on tortious interference, remained to be decided.

To repeat in part, C.A.G. asked for and received a voluntary nonsuit order from the circuit court, which dismissed its tortious-interference counterclaim *without prejudice* on March 14, 2007. Thus, there remains a dangling issue that has yet to be decided. This court has decided many cases with respect to the effect of a voluntary nonsuit of a claim on the finality of an order. In *Ratzlaff v. Franz Foods of Ark.,*

we held that a partial summary judgment cannot be converted into a final, appealable order by a plaintiff taking a voluntary nonsuit with respect to additional counts in his complaint against the same defendant. 255 Ark. 373, 500 S.W.2d 379 (1973); *see also Haile v. Ark. Power & Light Co.,* 322 Ark. 29, 907 S.W.2d 122 (1995).

The year after the *Haile* decision was handed down, this court distinguished the facts of *Ratzlaff* and *Haile* in *Driggers v. Locke,* 323 Ark. 63, 913 S.W.2d 269 (1996). In *Driggers,* we held that a summary-judgment order was final and appealable where it dispensed with all claims against one defendant, and the plaintiff took a voluntary nonsuit against the other named defendant. The *Driggers* court noted that "nothing requires a plaintiff to sue the prospective defendants simultaneously." *Id.* at 66, 913 S.W.2d at 270. In its brief before this court, C.A.G. cites a post-*Driggers* decision for the proposition that the taking of a voluntary nonsuit with respect to an opposing party does not adversely affect the finality of an order regarding the remaining parties. *Renfro v. Adkins,* 323 Ark. 288, 293, 914 S.W.2d 306, 308 (1996). The same, however, does not hold true for nonsuiting a *claim.*

The case before us is distinguishable from both *Driggers* and *Renfro* in that it does not involve the nonsuit of all claims against one defendant. Rather, C.A.G. took a nonsuit of its tortious-interference counterclaim against the sole plaintiff, Crockett, which it may now refile at any time within the applicable time frame. *See, e.g., Linn v. NationsBank,* 341 Ark. 57, 14 S.W.3d 500 (2000) (a defendant who

---

basis [sic] set forth in the Complaint as amended. That by this Order, the court intended to and did enter a final Order of Dismissal with prejudice of plaintiff's Complaint and hereby reaffirms that ruling...."

4. At the October 13, 2008 hearing, counsel for C.A.G. specifically requested a Rule 54(b) certificate due to concerns that Crockett's actions in nonsuiting her deed-reformation claim would defeat finality.

nonsuits all of his or her compulsory counterclaims is not barred from bringing those claims against the plaintiffs again).

In *Bevans v. Deutsche Bank Nat'l Trust Co.*, we had before us the issue of whether a circuit-court order was final and appealable where the defendant nonsuited all of her compulsory counterclaims, and the order subsequently addressed only the plaintiff's claims. 373 Ark. 105, 281 S.W.3d 740 (2008). We held that "an order or judgment providing for the nonsuit of those counterclaims, while entertaining a judgment on the plaintiff's claims, is not a final, appealable order under Rule 54(b)." *Id.* at 109, 281 S.W.3d at 744; *see also Bell v. Simms*, 2010 Ark. App. 48, at 1, 2010 WL 135318 (per curiam).

A compulsory counterclaim is defined in our rules:

A pleading shall state as a counterclaim any claim which, at the time of filing the pleading, the pleader has against any opposing party, *if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim* and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Ark. R. Civ. P. 13(a) (2009) (emphasis added). To prove tortious interference under Arkansas law, C.A.G. must prove the following elements: (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *See, e.g., K.C. Props. of N.W.*

*Ark., Inc. v. Lowell Inv. Partners, LLC*, 373 Ark. 14, 26, 280 S.W.3d 1, 11 (2008). This court also requires that the defendant's conduct be at least "improper" for a valid tortious-interference claim.

Given the elements of tortious interference, and the allegations in C.A.G.'s counterclaim that the complaint and lis pendens were improper and interfered with its business, it is clear that the counterclaim was a compulsory claim under Rule 13(a). According to the counterclaim, Crockett's actions were "improper because the lawsuit and lis pendens notice was [sic] filed without probable cause because the lawsuit is without merit, which plaintiff knows or is charged with knowledge of. . . ." C.A.G. would be unable to prove that Crockett's actions were improper without delving into the merits of the underlying complaint. Accordingly, the counterclaim was compulsory. *See also First Nat'l Bank of DeWitt v. Cruthis*, 352 Ark. 292, 298, 100 S.W.3d 703, 707 (2003) (tortious interference with contract counterclaim held to be compulsory under Rule 13).

Neither party raises the issue of the finality of the February 5, 2009 order due to C.A.G.'s voluntary nonsuit of its counterclaim, but this court must necessarily address it because it affects our jurisdiction over the appeal. *See Haile*, 322 Ark. 29, 907 S.W.2d 122. It is clear from the record that the circuit judge has not met the requirements of Rule 54(b) in this case. Under *Bevans*, the voluntary nonsuit of the tortious-interference counterclaim did not operate to make the December 4, 2007 order final and appealable because the counterclaim can be refiled.[5] In sum, because the February 5, 2009 order does not mention, much less adjudicate, the C.A.G. counterclaim, this court

---

**5.** Crockett's complaint and lis pendens were filed on June 15, 2007. Thus, the three-year statute of limitations for the tortious-interference counterclaim has not yet run.

lacks jurisdiction due to the unresolved issue, and the appeal must be dismissed without prejudice.[6]

Dismissed without prejudice.

---

6. We note that, under *Haile v. Ark. Power & Light Co., supra,* this court may also lack jurisdiction of the appeal as a result of Crockett's voluntary nonsuit of her deed-reformation claim, which arises out of the February 18, 1998 deed. Crockett nonsuited one, but not all, of her claims against C.A.G., as prohibited by *Haile.* However, it is unclear how the possible running of the statute of limitations and savings-statute period for Crockett's deed-reformation claim may affect the viability of that claim and our holdings regarding finality. Accordingly, we base our dismissal on the clear violation of *Bevans* with regard to C.A.G.'s tortious-interference counterclaim.