Kim CROCKETT, Appellant,

v.

C.A.G. INVESTMENTS, INC., Appellee.

No. 10–987.

Supreme Court of Arkansas.

May 12, 2011.

See 258 S.W.3d 374.

Paul N. Ford, Jonesboro, and Brian G. Brooks, Attorney at Law, PLLC, by: Brian G. Brooks, for appellant.

Fogleman, Rogers & Coe, West Memphis, by: Joe M. Rogers, for appellee.

JIM GUNTER, Justice.

This is an appeal from a grant of summary judgment in favor of appellee C.A.G. Investments, Inc., in which appellant Kim Crockett asserts three points on appeal: (1) that the circuit court erred in granting summary judgment to C.A.G.; (2) that the circuit court erred in awarding C.A.G. attorney's fees as the prevailing party; and (3) that the circuit court erred in sanctioning Crockett under Rule 11. Our jurisdiction is pursuant to Rule 1–2(a)(7) of the Rules of the Arkansas Supreme Court because this case is a subsequent appeal

following an appeal decided by this court.[1] We affirm.

In 1993, Bob Herren and Tom Papachristou developed a business plan for a crop-dusting service and a farm-equipment export business. Herren would provide financing and facilities and Papachristou would oversee operations. Herren incorporated the business, Omni Holding and Development Corp., in Louisiana, but it was to be located in Arkansas. Thereafter, Herren and his girlfriend, Shirley Despot, organized C.A.G. Investments Inc. as a Louisiana corporation and, in January 1994, C.A.G. purchased an eighty-acre tract of land outside of Marion, Arkansas, to serve as Omni's headquarters. Despot, Herren, and Papachristou agreed that Omni would pay the taxes and insurance on the land until the business could afford to make rental payments. Additionally, C.A.G. purchased a home for Papachristou and his girlfriend, Kim Crockett, who was also an Omni employee. In July 1997, Crockett became a minority shareholder in Omni, and by May 2005, she became its sole stockholder, president, and chairman of the board.

On December 3, 1997, Despot, acting for C.A.G., conveyed the eighty-acre tract of land to Crockett by warranty deed for the purchase price of $50,000. Prior to recording the deed, Papachristou asked Herren to secure additional financing from Despot and C.A.G. for Omni's export business. C.A.G. refused the request for additional financing unless it owned the land. Thereafter, on February 18, 1998, C.A.G. wired $50,000 to Omni, and Crockett executed a warranty deed to C.A.G. transferring the property. Both the December 1997 and February 1998 deeds were recorded on February 19, 1998.

Herren, as president of Omni, signed a $175,000 promissory note on September 15, 1998, in favor of C.A.G. for the purpose of consolidating Omni's outstanding indebtedness to C.A.G. The note was secured with an aircraft owned by Omni. One year later, Omni executed a bill of sale in favor of C.A.G., conveying airplane hangars, which had been built on the eighty-acre tract, thereby securing title to the improvements in C.A.G. On March 2, 2000, Omni borrowed $150,000 from Textron Financial Corporation, a loan which was personally guaranteed by Despot. The $150,000 note was also secured by the identical aircraft that secured the earlier $175,000 note from Omni to C.A.G.

Thereafter, Omni suffered numerous financial difficulties, resulting in the deterioration of the business relationship among the parties. In late summer 2003, Despot and Herren learned that Omni was contemplating bankruptcy and that Papachristou was in Greece. Despot and Herren promptly traveled to Arkansas and discovered that the aircraft designated as security on both the Textron and C.A.G. notes had crashed in 2002. In addition, insurance proceeds payable to C.A.G., Omni, and Textron as loss payees, totaling $233,500, had been deposited into Omni's bank account on May 15, 2002, without the endorsement of either C.A.G. or Textron. In November 2003, C.A.G. demanded that Omni immediately remove all personal property it owned or possessed from the real property owned by C.A.G. and to surrender possession of the real property.

---

1. This court has issued opinions in two cases involving substantially the same facts as this case: *Crockett v. C.A.G. Investments, Inc.*, 2010 Ark. 90, 361 S.W.3d 262 (dismissing Crockett's first appeal for lack of a final order), and *Omni Holding & Development Corp.* *v. C.A.G. Investments, Inc.*, 370 Ark. 220, 258 S.W.3d 374 (2007) (affirming the trial court's order quieting title in the disputed property to C.A.G. and holding that Omni did not have standing because it was not a party to either deed conveying the property).

Omni refused to comply, and C.A.G. filed a complaint on December 18, 2003, asserting that Omni was in possession of real property owned by C.A.G. and that the property was being unlawfully detained. The circuit court entered an order on June 22, 2004, stating that Omni had committed an unlawful detainer of the property and that C.A.G. was entitled to a writ of possession of the property without the requirement of posting a bond. Omni requested permission to post bond and remain in possession but failed to post the required bond. Moreover, Omni did not vacate the premises, and Papachristou continued to reside on the premises.

C.A.G. amended its complaint, seeking additional remedies for outstanding debts. C.A.G. also filed a petition for contempt against Papachristou, asserting that, with Omni's permission, he willfully remained on the premises and authorized other persons to remain on the premises in violation of the court's orders. The petition requested that the court find Papachristou and Omni in contempt. Omni counterclaimed for quiet title, asserting that although Crockett signed and delivered a deed to C.A.G. purportedly conveying the real property, Omni never intended to vest title in C.A.G.

The case was tried and, on May 30, 2006, the circuit court entered its order and judgment, finding in pertinent part as follows: (1) C.A.G. was the record fee simple title owner of the land and that all improvements and fixtures were quieted in C.A.G.; (2) Omni's claim to rescind and reform C.A.G.'s title into a mortgage and quiet title in Omni was denied and dismissed; (3) C.A.G.'s claim that Omni was indebted to it under the terms of a promissory note, or was otherwise liable in debt to it, was denied and dismissed; (4) Omni and Papachristou were in contempt for failing to vacate the premises after the court awarded possession to C.A.G.; and (5) Omni had abandoned all personal property it left on the premises following its failure to post the requisite bond to retain possession.

Omni timely appealed the circuit court's order quieting title in favor of C.A.G., and this court affirmed the circuit court's decision, holding that Omni was precluded from seeking reformation of either the December 1997 deed or the February 1998 deed because it was not a party to either. *Omni Holding & Dev. Corp. v. C.A.G. Invs., Inc.*, 370 Ark. 220, 228, 258 S.W.3d 374, 380 (2007).

On June 15, 2007, after this court's decision in *Omni*, Crockett filed a reformation and quiet-title action against C.A.G. averring substantially the same allegations as the counterclaim previously filed by Omni in its litigation with C.A.G. On the same day, Crockett filed a lis pendens to provide notice that the land in question was subject to an action to quiet title. On August 2, 2007, C.A.G. answered and raised the defenses of statute of limitations, laches, estoppel, waiver, res judicata, and collateral estoppel. Additionally, it sought Rule 11 sanctions against Crockett and her attorney for filing the complaint and lis pendens and filed a motion to quash the lis pendens. Later, on August 24, 2007, C.A.G. filed a counterclaim against Crockett for tortious interference with its business right to sell or mortgage the land. On October 1, 2007, Crockett amended her complaint to add a breach-of-contract claim, alleging that she was contractually bound with C.A.G. to use the land as collateral for the $50,000 loan and that C.A.G. breached the contract by not returning the land when the debt was satisfied. On October 11, 2007, C.A.G. moved for summary judgment. On November 5, 2007, Crockett moved for a voluntary nonsuit of her reformation and quiet-title claims;

her breach-of-contract claim remained pending. The circuit court held a hearing and granted summary judgment on December 4, 2007, in favor of C.A.G. on the basis of waiver, res judicata, and collateral estoppel.

On December 31, 2007, Crockett appealed to the Arkansas Court of Appeals, but later moved to dismiss her appeal, which the court granted. Thereafter, C.A.G. voluntarily dismissed its tortious-interference counterclaim without prejudice, and an order to that effect was entered by the circuit court. On February 5, 2009, the circuit court entered an order reaffirming its grant of summary judgment, awarding C.A.G. $5670 in attorney's fees, and sanctioning Crockett and her attorney in the sum of $5670 for violating Rule 11. Crockett appealed; this court dismissed the appeal without prejudice because the February 5, 2009 order of the court did not adjudicate all claims-specifically, it left unresolved C.A.G.'s counterclaim, which had been voluntarily nonsuited. *See Crockett,* 2010 Ark. 90, 361 S.W.3d 262.

On June 14, 2010, C.A.G. again filed its counterclaim in circuit court, and Crockett answered. On June 18, 2010, the circuit court entered an order in which it certified the case for appeal pursuant to Rule 54(b), explaining in detail the policies best served by allowing the case to be appealed without a final order as to all claims. On July 2, 2010, Crockett filed her notice of appeal from the June 18 order and the interlocutory orders granting summary judgment to C.A.G. and awarding sanctions against Crockett.

### I. *Summary Judgment*

Appellant's first argument on appeal is that the circuit court erred in granting summary judgment in favor of appellee. The law is well settled regarding the standard of review used by this court in reviewing a grant of summary judgment. *Bryan v. City of Cotter,* 2009 Ark. 172, 303 S.W.3d 64. A trial court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. *Id.* The burden of proof shifts to the opposing party once the moving party establishes a prima facie entitlement to summary judgment; the opposing party must demonstrate the existence of a material issue of fact. *Id.* After reviewing the undisputed facts, the trial court should deny summary judgment if, under the evidence, reasonable minds might reach different conclusions from the same undisputed facts. *Id.* On appeal, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party leave a material question of fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* This review is not limited to the pleadings but also includes the affidavits and other documents filed by the parties. *Id.*

In its oral ruling after the hearing on the summary-judgment motion, the circuit judge found that Crockett was thoroughly involved in the prior legal proceeding on behalf of Omni and had every opportunity to make an individual claim for ownership of the property. The court noted that the previous suit was one to quiet title and that Crockett had never stepped forward to assert her own individual claim for ownership despite being fully aware of the issues in that suit. The court granted summary judgment to C.A.G. on the basis of waiver, res judicata, and collateral estoppel.

On appeal, Crockett argues that none of the three grounds enumerated in the circuit court's order granting summary judgment—waiver, res judicata, or collateral estoppel—support awarding judgment as a matter of law in C.A.G.'s favor. Because we are persuaded that the circuit court properly granted summary judgment because Crockett's claims were barred by res judicata, we affirm the circuit court's entry of summary judgment and need not address the remaining arguments. *See Windsong Enters., Inc. v. Upton*, 366 Ark. 23, 233 S.W.3d 145 (2006); *Moses v. Bridgeman*, 355 Ark. 460, 139 S.W.3d 503 (2003).

 The concept of res judicata has two facets, one being claim preclusion and the other issue preclusion.[2] *McWhorter v. McWhorter*, 2009 Ark. 458, 344 S.W.3d 64. Under claim preclusion, a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim. *Id.* Claim preclusion (res judicata) bars not only the relitigation of claims which were actually litigated in the first suit, but also those which could have been litigated. *Id.* Where a case is based on the same events as the subject matter of a previous lawsuit, claim preclusion will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *Id.* Under issue preclusion (collateral estoppel), a decision by a court of competent jurisdiction on matters which were at issue, and which were directly and necessarily adjudicated, bars any further litigation on those issues by the plaintiff or his privies against the defendant or his privies on the same issue. *Linn v. Nati-*

*onsBank*, 341 Ark. 57, 14 S.W.3d 500 (2000). The true reason for holding an issue to be barred is not necessarily the identity or privity of the parties, but instead to put an end to litigation by preventing a party who has had one fair trial on a matter from relitigating the matter a second time. *Francis v. Francis*, 343 Ark. 104, 111, 31 S.W.3d 841, 845 (2000).

 Privity exists when two parties are so identified with one another that they represent the same legal right. *Jayel Corp. v. Cochran*, 366 Ark. 175, 234 S.W.3d 278 (2006) (holding that an attorney-client relationship was sufficient to satisfy the privity requirement). We have never required strict privity in the application of res judicata, but instead have supported the idea that there must be a "substantial identity of parties" to apply the doctrine. *Wells v. Heath*, 269 Ark. 473, 602 S.W.2d 665 (1980); *Rose v. Jacobs*, 231 Ark. 286, 329 S.W.2d 170 (1959). However, we have found privity for purposes of res judicata between a brother and sister, *Francis*, 343 Ark. at 104, 31 S.W.3d at 841 (holding that a son's settlement with father involving a guardianship proceeding was res judicata as to father's subsequent suit with daughter); between a testator and his remote heirs, *Hardie v. Estate of Davis*, 312 Ark. 189, 848 S.W.2d 417 (1993) (holding that a settlement by a testator is binding on the remote heirs); between a landlord and tenant, *Phelps v. Justiss Oil Co.*, 291 Ark. 538, 726 S.W.2d 662 (1987) (holding that a successor in interest is in privity with its grantor such that a prior ruling against the grantor is binding against the successor); between an insurer and its insured, *S. Farm Bureau Cas. Ins. Co. v. Jackson*,

---

**2.** Although issue preclusion and claim preclusion both constitute the doctrine of res judicata, the term "res judicata" has sometimes been used to refer to only claim preclusion, which was a common-law doctrine, and "collateral estoppel" has been used to refer to issue preclusion, which was a federally developed doctrine applicable to the state through the Fifth Amendment. *Mason v. State*, 361 Ark. 357, 206 S.W.3d 869 (2005).

262 Ark. 152, 555 S.W.2d 4 (1977) (holding that privity exists where insurer provided defense of insured except where the interests of the insured and insurer conflicted); between a bankrupt debtor and his trustee, *Curry v. Hanna,* 228 Ark. 280, 307 S.W.2d 77 (1957); and between a husband and wife in a land-dispute lawsuit, *Collum v. Hervey,* 176 Ark. 714, 3 S.W.2d 993 (1928) (holding that a title quieted against a husband was conclusive against the wife who had not been a party in the original lawsuit).

 Here, the circuit court found that both res judicata (claim preclusion) and collateral estoppel (issue preclusion) applied to grant summary judgment to appellee. We affirm the grant of summary judgment because Crockett's second lawsuit is prohibited under the doctrine of claim preclusion. Crockett was the president, chairman of the board, and sole stockholder of Omni during the first lawsuit. We have stated that "[a] person who, with knowledge of the facts and of his rights, assents to, ... judicial proceedings without objection is ordinarily bound by such proceedings as against one who has been misled to his injury." *Jones v. Nat'l Bank of Commerce of El Dorado,* 207 Ark. 613, 621, 182 S.W.2d 377, 381 (1944) (quoting 31 C.J.S., *Estoppel,* § 115, at 368 (1923)). Crockett served as corporate representative for Omni throughout the litigation to quiet title. The deeds and property at issue in Crockett's current case against C.A.G. are exactly the same as in the prior litigation in which the circuit court quieted title to C.A.G. Based on our law concerning privity, Crockett cannot now assert that she has an individual right to quiet title to the same land regarding the same conveyance as was at issue in the first litigation where she was aware of the prior litigation, took part in it, and was fully aware that her individual rights to the property would be directly affected by it. Where a person stands by and fails to assert a claim, that person cannot later assert the claim against the interest of another who relied on his silence. *Calvert Fire Ins. Co. v. Carpet Mart of Texarkana,* 266 Ark. 477, 587 S.W.2d 1 (1979); *see also Carrigan v. Carrigan,* 218 Ark. 398, 236 S.W.2d 579 (1951) (stating that the strict rule that res judicata applies only to parties or privities can be expanded to include parties or persons who are not technically a party to a judgment but who are connected with it by an interest in the prior litigation and their right to participate therein). Under this line of cases, the circuit court was correct to grant summary judgment in this case based on claim preclusion because appellant was closely connected to the first litigation as the sole stockholder, chairman of the board, and president; took part in the first litigation on behalf of Omni; and should have exercised her asserted rights to the property at that time.

## II. *Attorney's Fees*

Because we agree that the circuit court appropriately ordered summary judgment in favor of C.A.G., we must address Crockett's argument that the circuit court erred in awarding attorney's fees to C.A.G. Crockett's argument against the grant of fees is based solely on her assertion that C.A.G. was not a prevailing party under the law because the circuit court erred in granting summary judgment in favor of C.A.G.

 This court follows the American Rule and has consistently held that a party is not entitled to attorney's fees except as provided by statute. *Harris v. City of Fort Smith,* 366 Ark. 277, 234 S.W.3d 875 (2006). Arkansas Code Annotated section 16–22–308 provides:

In any civil action to recover on an open account, statement of account, account stated, promissory note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, or breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs.

Ark.Code Ann. § 16–22–308 (Repl.1999). This court has also said that a circuit court is not required to award attorney's fees and, because of the judge's intimate acquaintance with the trial proceedings and the quality of the service rendered by the prevailing party's counsel, the circuit judge has a superior perspective to determine whether to award fees. *Marcum v. Wengert*, 344 Ark. 153, 40 S.W.3d 230 (2001). The decision to award attorney's fees and the amount to award is discretionary and will be reversed only if the appellant can demonstrate that the circuit court abused its considerable discretion. *Id.* at 160, 40 S.W.3d at 235.

We see no reason to disturb the circuit court's ruling granting attorney's fees to C.A.G. in this instance. We have affirmed the circuit court's grant of summary judgment to C.A.G.; consequently, C.A.G. is the prevailing party in a lawsuit involving a breach-of-contract claim brought by Crockett. Arkansas Code Annotated section 16–22–308 allows for attorney's fees in breach-of-contract cases within the discretion of the circuit judge. Here, the circuit judge awarded C.A.G. fees in the amount of $5670, and there is no argument that this amount is unreasonable in light of the type and duration of this litigation. Therefore, we are satisfied that the circuit court did not abuse its discretion in this respect.

### III. *Rule 11 Sanctions*

Appellant also claims that the circuit court erred in punishing her and her attorney with Rule 11 sanctions. Rule 11 of the Arkansas Rules of Civil Procedure instructs that:

(a) Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name.... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Ark. R. Civ. P. 11(b) (2009). We review a circuit court's determination of whether a violation of Rule 11 occurred and what the appropriate sanction should be under an abuse-of-discretion standard. *Sanford v. Harris*, 367 Ark. 589, 242 S.W.3d 277 (2006). In our review, we give the circuit court's determination "substantial deference." *Id.*

We affirm the circuit court's sanctions pursuant to Rule 11 in this instance. The circuit court determined that appellee was required to expend fees in defending the unwarranted breach-of-contract claim that appellant and her attorney should have known was barred by the doctrine of res judicata. This finding is supported by the fact that Crockett filed a complaint asserting facts and legal theories against C.A.G. in her individual capacity after we issued our opinion affirming the circuit court's order quieting title to the land in C.A.G. *on the same facts and legal theories.* The circuit court also found that appellant and her attorney failed to obtain necessary rulings that would have prevented the dismissal of her case on appeal, causing more unnecessary expenses for appellee. Moreover, in assessing a penalty pursuant to Rule 11, the circuit court ordered Crockett to pay $5670 but noted that the award of attorney's fees and imposition of sanctions could be satisfied with one payment of $5670. Under the circumstances, we cannot say that the circuit court abused its discretion in finding Rule 11 sanctions were warranted.

Affirmed.