STEWART *v.* HEDRICK.

4-7094                                                   172 S. W. 2d 416

Opinion delivered June 14, 1943.

1064

*Sullins & Perkins,* for appellant.

*O. E. Williams,* for appellee.

SMITH, J. Appellee alleged, for his cause of action, that he had been induced to convey a tract of land owned by him in Franklin county through a conspiracy entered into between Carl V. Stewart and his wife, and certain other parties named in the complaint, the purpose and effect of the conspiracy being to cheat and defraud appellee into the execution of a deed to his land without consideration. The other persons made parties defendant were J. E. McDowell, Ben Foster and Sam Thomas.

The judgment, from which is this appeal, was against Stewart and his wife, and Foster. The latter filed an answer, but has not appealed. It does not appear that service was had on McDowell, who, at the time of the institution of the suit, was employed as a bartender in Texas, nor was service had on Thomas, who was confined in a jail in Texas. After rendering this judgment, the court, at a later day of the same term, set aside and vacated the judgment against Stewart's wife.

The judgment recites that the cause came on for trial before a jury on September 8, 1942, and that: " . . . And after having heard all of the evidence, the defendants, Carl V. Stewart and Rema J. Stewart, asked for a directed verdict, and did not ask for any further instructions. Whereupon, plaintiff also asked for a directed verdict in his favor against said defendants. Whereupon, the court announced that he would discharge the jury and take the case under advisement and

render a judgment on the 18th day of September, 1942. There being no objection upon the part of anyone, the court in the presence of the plaintiff and his counsel and of the defendants, Carl V. Stewart and Rema J. Stewart, and their counsel, discharged the jury, and announced that it would render judgment on September 18, 1942.''

The case was further heard on September 18, 1942, at which time judgment was rendered in favor of appellee against the Stewarts and Foster for $1,600, the value of the land.

There was filed by Stewart and his wife, on September 18, 1942, a ''motion to declare mistrial.'' As we understand the record, the motion was filed before the rendition of the judgment.

In overruling this motion the court made the following statement: ''This case was tried September 8, 1942, and the defendants asked for a directed verdict at the close of plaintiff's testimony whereupon the plaintiff also asked the court to direct a verdict in his favor. The court remarked that it looked like that took the case from the jury and placed the burden upon the court. There was no response from either plaintiff or defendants. The law of the case was argued in the absence of the jury which had been excused for the noon hour. In the *interim*, the court asked the defendants' attorney if he had any additional instructions, and he said, 'none.' When court convened at 1:00 o'clock, the jury was told that each side had asked for an instructed verdict, and that they were therefore relieved of the burden of passing upon the case and the matter was to be decided by the court, and they were then discharged from the case. There were no objections or exceptions from either side and the court continued the cause to September 18 for further study and for judgment at that time.

''It is, therefore, the finding and judgment of this court that the defendants closed their case and stood upon their motion for a directed verdict, and that all the evidence on both sides was closed.

''The motion to take proof comes too late and is denied.''

The record in the case, including the notations upon the docket of the judge, sustains this finding.

The practice in cases of this kind was announced in *Holloway* v. *Parker,* 197 Ark. 209, 122 S. W. 2d 563, 119 A. L. R. 1359, where the earlier cases upon the subject were reviewed. It was there said that the effect of these earlier cases, where each party requested a directed verdict and neither requested any other instruction, was to withdraw the case from the jury; but that asking a directed verdict by the defendant, even though the plaintiff had also requested a directed verdict after the plaintiff had closed his case, would not forestall the defendant from introducing testimony after his request for a directed verdict had been refused. But unless the request is made to offer further testimony the court may treat the submission to the jury as having been withdrawn, and the case as having been submitted to the court for decision. The findings of the court rendered under these circumstances are given the same effect as is given to the verdict of a jury. We have, therefore, a judgment which must be affirmed if there is any substantial testimony to support it.

The liability of Foster need not be considered as he has not appealed from the judgment against him.

No testimony was offered except that of the plaintiff Hedrick, and his testimony was to the following effect: he owned a farm in Franklin county for which he paid $2,400. He moved to Hobbs, New Mexico, and having concluded to reside there permanently he decided to sell his Arkansas farm. He listed the farm with a local real estate agent at Charleston to be sold at a price to net him $1,800. Thomas was advised that Hedrick wished to sell his Arkansas farm and Thomas visited Hedrick in New Mexico, and proposed the trade which was later consummated. Thomas proposed to trade a note for $2,000, secured by a mortgage on 21 tracts of land, totaling 1,280 acres, apparently given by McDowell to Mrs. Stewart to secure McDowell's note for that amount given to Mrs. Stewart·in payment of the land. He further represented that McDowell owned 250 acres of land, and,. in addi-

tion, he was a trader, and that the note had been acquired and later indorsed by Foster, who was a wealthy man worth at least $50,000. Relying upon these representations, all of which were false, Hedrick deeded his Arkansas farm to Thomas, who assigned the note and mortgage to Hedrick. Within a few days after receiving the deed, Thomas sold the farm to one Looney for $800 and certain oats thereon for $50 additional. Looney is not a party to this litigation, and it is not questioned that Looney took title to the farm under his deed from Thomas. Hedrick testified that Looney had previously offered him $1,500 for the land, and that the offer was declined.

The history of the note assigned to Hedrick by Thomas is as follows: Stewart and wife, for a recited consideration of $1, executed a warranty deed to McDowell for a number of tracts of land, totaling 1,280 acres, all in Madison county, Arkansas. The deed bears date September 14, 1940, and was filed for record December 5, 1941. It is recited in the deed that "this deed is made subject to records of Madison (county) and also subject to taxes."

A mortgage from McDowell to Rema J. Stewart was offered in evidence, which was dated November 3, 1939, and filed March 13, 1940. This mortgage describes 21 tracts of land, totaling 1,280 acres, and it appears that the land described in the mortgage is substantially the same as that described in the deed, and Hedrick testified that he was told that both instruments had been executed on the same day.

There is no averment in the answers, either of Stewart and his wife, or that of Foster, that any of the parties to this litigation ever at any time had title or color of title to any of the lands described in the deed or mortgage, although both answers alleged that the answering defendants had acted honestly and in good faith, and had no intention to defraud any one.

A certificate by the State Land Commissioner was offered in evidence, which recites that the title to all of the lands except four tracts thereof described in the

mortgage was in the state, and that the state had never parted with its title. This certificate is to the further effect that the four tracts, each of 40 acres, which did not belong to the state had been donated, purchased or redeemed between September 14, 1938, and October 21, 1940.

We think the recited testimony sufficient to support the finding of the court below that Hedrick had been defrauded of his lands as the result of a conspiracy to which the appellant Stewart was a party. The law applicable to the case was stated in the opinion in *Wilson* v. *Davis,* 138 Ark. 111, 211 S. W. 152, where it was said that a conspiracy may be inferred although no actual meeting of the parties is proved, if it be shown that two or more persons pursued by their acts the same unlawful purpose, each doing a part, so that their acts, though apparently independent, were in fact connected; and that when such an unlawful agreement is entered into, the parties become liable as joint tortfeasors to the extent of the damage done as a result of the conspiracy, and the liability of a particular conspirator does not depend upon the extent to which he profited nor his activity in promoting the conspiracy.

The record does not show what division was made of the purchase money paid for the land by Looney, but it was not necessary that this be done. It suffices to say that the testimony warranted the court in finding that through a conspiracy, to which the appellant Stewart was a party, Hedrick has been defrauded out of his land.

Before the trial of the case, a motion was filed to transfer it to equity, and error is assigned in the refusal to grant this motion. The contention is that Hedrick should have foreclosed his mortgage and sued on the note. This would have been an expensive and futile act as a sale of the land under a decree foreclosing the mortgage would have gained nothing as the parties to the mortgage had no interest in the land, at least no interest was alleged or shown.

The judgment must, therefore, be affirmed, and it is so ordered.