SEACHANGE INTERNATIONAL, INC. *v.*
Jeffrey O. PUTTERMAN, Lathrop Investment Management
Corporation; Concurrent Computer Corporation; John Doe
No. 1; John Doe No. 2; and John Doe No. 3

CA 01-1126                                    86 S.W.3d 25

Court of Appeals of Arkansas
Division IV
Opinion delivered October 2, 2002

*Friday, Eldredge & Clark,* by: *Elizabeth Robben Murray* and *Ellen M. Owens,* for appellant.

*Quattlebaum, Grooms, Tull & Burrow PLLC,* by: *Leon Holmes, John E. Tull III,* and *Kristine G. Baker,* for appellee Concurrent Computer Corporation.

JOHN F. STROUD, JR., Chief Judge. SeaChange International, Inc., has appealed from a partial summary judgment entered on behalf of appellee Concurrent Computer Corporation in SeaChange's defamation and civil conspiracy lawsuit against Jeffrey Putterman, Lathrop Investment Management Corporation, Concurrent, and three John Does. The circuit judge certified this case for an interlocutory appeal under Arkansas Rule of Civil Procedure 54(b). The controlling issue on appeal is whether a genuine issue of material fact exists as to SeaChange's civil conspiracy claim against Concurrent. We hold that the circuit judge erred in granting summary judgment to Concurrent, and we reverse and remand for trial.

SeaChange develops and manufactures computer servers and software systems that distribute digital video for use in interactive television and video-on-demand. Concurrent competes with SeaChange in the video-on-demand market. In 1998, Putterman was a portfolio manager employed by Lathrop. As a portfolio manager, and on his own behalf, Putterman invested a significant amount of funds in Concurrent stock. While at work, Putterman

posted derogatory messages about SeaChange on internet message boards using several aliases. Putterman stated that SeaChange's server did not work, that its server's cost-per-stream was higher than Concurrent's cost-per-stream, and that SeaChange was in financial trouble. Putterman also posted that SeaChange had given away, rather than sold, two servers to a Canadian cable operator. SeaChange's stock deteriorated in value, and it retained attorney Lance Lazzaro to investigate the matter. Lazzaro determined that the postings were made from Lathrop's office and sent a letter to Lathrop demanding an apology.

Putterman immediately posted the following apology on the internet: "My posts about SeaChange International contained information which I know was totally false and erroneous, which caused damage to the Company's stock price, to the company's reputation, and to shareholder confidence." According to Putterman, Lazzaro promised him a release if he posted this apology. As it turned out, Putterman did not obtain a release, and SeaChange filed this suit. SeaChange alleged that the defendants had defamed it and had conspired to harm it by publishing false information for financial gain. Although the complaint's defamation count purports to be against all of the defendants, it is clear that the only claim against Concurrent was the civil conspiracy claim.

The parties conducted extensive discovery, and several depositions were taken. The documentary evidence showed that many telephone calls between Putterman and Concurrent were placed during the relevant time frame, some of which were initiated by Concurrent. In his answer and his deposition, Putterman claimed to have received information about SeaChange from several individuals, including Concurrent executives and others.

Concurrent moved for summary judgment, arguing that its chief executive officer, Courtney "Corky" Siegel, had simply provided factual information to Putterman and was unaware that Putterman had posted the information on the internet. In response, SeaChange filed copies of Putterman's internet postings, lists of the phone calls between Putterman and Concurrent, Putterman's and Siegel's depositions, and several affidavits. Putterman admit-

ted in his deposition that the defendants had entered into a joint defense agreement. According to SeaChange, Putterman changed his story about his sources after he entered into this defense agreement. Lazzaro, who had several conversations with Putterman in December 1998 and January 1999, claimed in his affidavit that Putterman had informed him that his source for the information about SeaChange was someone at Concurrent. Lazzaro also stated that, in January 1999, an attorney representing Putterman had told him that Siegel was Putterman's source. SeaChange also filed the affidavits of three other individuals who contradicted Putterman's claim of having received information from persons other than Siegel.

SeaChange also filed the affidavit of Monica Graham, a partner with an investment firm. She stated that in 1998 she invested in SeaChange, and that between June and December 1998 she read Putterman's postings, which caused her to question the credibility and honesty of SeaChange. She stated:

> During the same time period, I met on two occasions with the President and CEO of Concurrent, Corky Siegel. Mr. Siegel was trying to get me [sic] invest in Concurrent. In these meetings, Mr. Siegel repeated the same information that was appearing on the message boards. I specifically recall him stating that the SeaChange server was not working and that SeaChange was in financial difficulties. Mr. Siegel told me that he considered the message boards to be a good source of information and suggested that I read them.

The circuit judge granted Concurrent's motion for summary judgment, stating: "Viewing the proof most favorable to Plaintiff, SeaChange has failed to show that Concurrent conspired with the other separate defendants." The circuit judge later granted SeaChange's motion to certify this part of the case pursuant to Arkansas Rule of Civil Procedure 54(b).

*Arguments*

SeaChange argues on appeal that (1) the trial judge applied the wrong standard of proof in granting Concurrent's motion for summary judgment; (2) SeaChange submitted sufficient evidence

of a civil conspiracy to withstand a motion for summary judgment; and (3) genuine issues of material fact exist as to the credibility of Putterman and Siegel.

## Summary Judgment

■ ■ SeaChange is correct that the trial judge applied the wrong standard of proof. When a summary judgment motion has been made, the trial court should not apply the sufficiency of the evidence standard; its inquiry should instead be addressed to whether a genuine issue of material fact remained. All proof must be viewed in the light most favorable to the resisting party, and any doubts must be resolved against the moving party. *Aka v. Jefferson Hosp. Ass'n, Inc.,* 344 Ark. 627, 42 S.W.3d 508 (2001). In reviewing a summary-judgment case, we need only decide if the trial court's grant of summary judgment was appropriate based on whether the evidence presented by the moving party left a material question of fact unanswered. *Id.*

## Civil Conspiracy

■ The only question is whether a genuine issue of material fact exists regarding Concurrent's participation in a conspiracy to defame SeaChange. To prove a civil conspiracy, a plaintiff must show that two or more persons have combined to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in itself unlawful, oppressive, or immoral, but by unlawful, oppressive, or immoral means, to the injury of another. *Faulkner v. Arkansas Children's Hosp.,* 347 Ark. 941, 69 S.W.3d 393 (2002). A civil conspiracy is not actionable in and of itself, but a recovery may be had for damages caused by acts committed pursuant to the conspiracy. *Id.* A civil conspiracy is an intentional tort that requires a specific intent to accomplish the contemplated wrong. *Id.*

■ In *Mason v. Funderburk,* 247 Ark. 521, 446 S.W.2d 543 (1969), the supreme court explained:

> A conspiracy may be shown by direct evidence of an actual agreement or understanding between conspirators, but it may also be shown by circumstantial evidence. *Chapline v. State,* 77

Ark. 444, 95 S.W. 477. It also may be inferred from actions of alleged conspirators, if it be shown that they pursued the same unlawful object, each doing a part, so that their acts, although apparently independent, are in fact connected and cooperative, indicating a closeness of personal association and a concurrence of sentiment. *Wilson v. Davis*, 138 Ark. 111, 211 S.W. 152; *Stewart v. Hedrick*, 205 Ark. 1063, 172 S.W.2d 416; *Chapline v. State, supra.* Any act done or declaration made by one of the conspirators in furtherance, aid or perpetration of the alleged conspiracy may be shown as evidence against his fellow conspirators. *Wilson v. Davis, supra; Chapline v. State, supra.*

247 Ark. at 529, 446 S.W.2d at 548.

■ We believe that the pleadings, depositions, exhibits, and affidavits demonstrated the existence of a genuine issue of material fact as to whether Concurrent participated in a conspiracy with Putterman to defame SeaChange. Evidence of Concurrent's participation in a conspiracy included Lazzaro's statements that Putterman had said that his source was someone at Concurrent and that Putterman's attorney had later stated that the source was Siegel, additional affidavits contradicting Putterman's claim of having several sources, and telephone records revealing that Putterman placed many calls to Concurrent and that Concurrent initiated calls to Putterman during the relevant time frame. Certainly, Putterman's and Siegel's credibility was sufficiently questionable to raise a genuine issue of material fact. The obvious doubtfulness of the moving party's supporting evidence, including the credibility of an affiant, can create a genuine issue of material fact for a jury. *Clark v. Progressive Ins. Co.,* 64 Ark. App. 313, 984 S.W.2d 54 (1998). Further, Putterman's and Siegel's denials of having conspired together do not render the issue undisputed. *See Thomas v. Sessions,* 307 Ark. 203, 818 S.W.2d 940 (1991).

■ Most compelling, however, is Monica Graham's affidavit stating that, while trying to persuade her to invest in Concurrent, Siegel repeated the same derogatory information about SeaChange that was appearing on the message boards, that he considered the boards to be a good source of information, and that he suggested that she read them. A jury could easily infer from

this evidence that Siegel, on behalf of Concurrent, was participating with Putterman in a conspiracy to defame SeaChange.

Reversed and remanded.

CRABTREE and BAKER, JJ., agree.