SLIP OPINION

# SUPREME COURT OF ARKANSAS

**No.** CV–11–1273

|  |  |
|---|---|
|  | **Opinion Delivered** January 30, 2014 |
| TOM MUCCIO; MIKE MUCCIO; AND NEXT CHAPTER RESOURCES, LLC <br> APPELLANTS | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. CV–2010–1040–6] |
| V. | HONORABLE MARK LINDSAY, JUDGE |
| JOHNELLE HUNT; PHIL PHILLIPS; MIKE LAX; TOMMY VAUGHAN; WALTER SMILEY; MICHAEL JOHNSON; AMY SORRELL; DAVID SCHUMACHER; TREY TRUMBO; J.B. HUNT, LLC; JOHNELLE HUNT, LLC; PHIL AND JUDY PHILLIPS FAMILY LIMITED PARTNERSHIP, LLLP; TCH INVESTMENTS, LLC; BIG HORN LODGE FINANCING, LLC; BIOBASED HOLDINGS, LLC; SMILEY INVESTMENT COMPANY; LAX, VAUGHAN, FORTSON, MCKENZIE & ROWE, P.A.; HOMESTEAD HOMES, LLC; AND NEXT GENERATION HOLDINGS, LLC <br> APPELLEES |  |
|  | <u>REVERSED AND REMANDED</u>. |

**JOSEPHINE LINKER HART, Associate Justice**

Following the bankruptcy of BioBased Technologies, LLC, members of this bankrupt limited liability corporation, Tom Muccio, Mike Muccio, and Next Chapter Resources, LLC, brought a cause of action against other members, the lawyers of members, and the managers of the corporation. These claims included fraud, breach of duty to disclose company information, conversion of membership interest, civil conspiracy, and breach of contract. The

SLIP OPINION

circuit court dispensed with the appellees' claims by granting summary judgment on claims, dismissing claims, and finding that claims were barred by res judicata and collateral estoppel.

On appeal, appellants raise four issues. First, appellants assert that the circuit court erred in granting summary judgment on their claims for fraud, breach of duty to disclose company information, conversion, and breach of contract after the court found that the claims were derivative actions on behalf of BioBased rather than claims for injuries in their individual capacities and, therefore, appellants did not have standing to sue. Second, appellants argue that the circuit court erred in granting summary judgment on their fraud claim against Walter Smiley and Smiley Investment Company (SIC) on the basis that appellants "failed to meet proof with proof to show that Smiley or SIC made false representations of fact." Third, appellants contend that the circuit court erred in dismissing claims for lack of subject-matter jurisdiction. Fourth, appellants assert that the circuit court erred in concluding that claims were barred by res judicata or collateral estoppel. We reverse and remand the circuit court's decisions as more fully discussed below.[1]

---

[1] At the outset, it is important to note which claims and parties are not before this court in this appeal. In its order granting summary judgment, the circuit court dismissed without prejudice two claims against Mike Lax and Tommy Vaughan for violation of the Arkansas Deceptive Trade Practices Act. Also, in their briefs, appellants note that they also alleged in their complaint claims for violation of the Arkansas Deceptive Trade Practices Act, malpractice, and breach of fiduciary duty. Appellants state in their brief that they "will not wish to pursue them should this matter be remanded." They also state that they "will therefore make no further arguments concerning these claims." We accept this statement as a concession that even if we were to remand the circuit court's decision on these claims, they would not pursue these claims at trial. Thus, we do not discuss their claims regarding breach of fiduciary duty of care, breach of fiduciary duty, violation of the Arkansas Deceptive Trade Practices Act, breach of fiduciary duties to creditors, and malpractice/breach of fiduciary duty Further, in a second order, the circuit court dismissed without prejudice appellants' claims against Johnelle Hunt; Phil Phillips; David Schumacher; Trey Trumbo; Johnelle Hunt, LLC;

2

SLIP OPINION

I. *Facts as Alleged in Appellants' Third Amended Complaint*

The operative complaint in this cause of action is appellants' third amended complaint, and we set out appellants' allegations as they pertain to the parties and claims before us on appeal. Appellants alleged that their lawsuit arose from "wrongful behavior" relating to BioBased Technologies, LLC, and its predecessors, BioBased Chemicals, LLC, BioBased Insulation, LLC, and Biobased Systems, LLC (collectively, "BioBased"). J.B. Hunt and Tom Muccio partnered to form BioBased, with the understanding that J.B. Hunt would contribute capital, while Tom Muccio would primarily contribute his time and expertise. Capital contributions, with the help of lawyers Mike Lax and Tommy Vaughan, were classified as debt "to gain control" of BioBased. When J.B. Hunt died, Johnelle Hunt inherited his interest. Appellants alleged that they owned 41.81% of BioBased, while 56.19 % of the remainder was either owned or controlled by Johnelle Hunt.

Appellants alleged that in late September 2008, Tom Muccio, as CEO of BioBased, agreed to bring in Smiley and Smiley's company, SIC, as a business consultant upon the recommendation of Lax, who was Johnelle Hunt's attorney. Appellants further alleged that "[t]hough they represented Smiley would be neutral and objective and would make recommendations consistent with the best interests of BioBased, this was a boldfaced lie," and that Smiley came to BioBased as part of a larger overall conspiracy that included Johnelle Hunt, Lax, Vaughan, and Smiley, to "run off" Tom and take control of BioBased. Appellants

---

Phil and Judy Phillips Family Limited Partnership, LLLP; Big Horn Lodge Financing, LLC; and Next Generation Holdings, LLC. The circuit court certified that the case was final under Rule 54(b) of the Arkansas Rules of Civil Procedure.

alleged that by December 2008, Smiley had become chairman of the board, and by early 2009, had replaced Tom as CEO. Further, BioBased's sales fell off, and an operating line of credit with a bank was not renewed because Johnelle Hunt refused to execute loan documents to accomplish an extension despite her earlier agreement to do so. Consequently, the bank called its note, causing approximately $178,000 worth of checks to bounce in early June 2009.

At a meeting held August 14, 2009, Smiley told the members that BioBased's checks were likely to bounce if the company did not file for bankruptcy, even though it was not mentioned that sometime earlier, Amy Sorrell, as BioBased's acting CFO, had moved a significant amount of cash from the line-of-credit bank to another bank. The calling of the line-of-credit note was then used as a reason for recommending that BioBased file for bankruptcy, even though the bank had been ready and willing to extend its note beyond the August 31, 2009 maturity date. Based on representations made by Smiley at the August 14, 2009 meeting, appellants voted in favor of having BioBased file for Chapter 11 bankruptcy.

The resolution authorizing the company to file for bankruptcy "promised each of the members a voice in the reorganization process." Appellants, however, alleged that they were denied any real opportunity to participate in the formation of a plan, while Johnelle Hunt and her attorneys, Lax and Vaughan, were "given every advantage" by CEO Smiley, CFO Sorrell, and Michael Johnson, who was the chief legal officer for BioBased. The three, as BioBased's management, "secretly negotiated with Lax and Vaughan to create the offer upon which the plan was ultimately based," and management essentially prevented appellants from "making a competing offer" and "withheld company documents" from appellants while providing

4

them to Johnelle Hunt, Lax, and Vaughan. As a result, Johnelle Hunt, through BioBased Holdings, LLC ("Holdings"), was able to make an offer, while management discouraged other potential investors, giving Hunt a "virtual exclusive option to purchase BioBased." Appellants alleged that BioBased's assets were intentionally undervalued to facilitate the takeover at the lowest possible price.

The complaint alleged numerous claims. In pertinent part, the complaint alleged fraud by Lax, Vaughan, Smiley, and SIC; breach of duty to disclose company information by Smiley, SIC, Sorrell, and Johnson; conversion of membership interest by Smiley, SIC, Lax, Vaughan, and Holdings; civil conspiracy by Lax, Vaughan, Smiley, SIC, Sorrell, and Johnson; and breach of contract by J.B. Hunt, LLC, and TCH Investments, LLC (TCH).

## II. *The Circuit Court's Order*

We set out the circuit court's findings as they pertain to the parties and claims before us on appeal. The circuit court found that Lax, Vaughan, and their law firm, Vaughan, Fortson, McKenzie & Rowe, P.A., were not entitled to summary judgment on the conspiracy claim and that appellants had met their burden of showing that there remained material facts to be decided on their fraud claim as to Lax and Vaughan. Nevertheless, the court concluded that they were entitled to summary judgment on all claims because there was "no genuine issue of material fact and such claims [were] derivative in nature and [appellants] lack standing to assert them." The court further found that these same parties were entitled to summary judgment because there was "no genuine issue of material fact and such claims were barred by res judicata and collateral estoppel."

5

The court also found that Smiley, SIC, Sorrell, and Johnson were entitled to summary judgment "on the basis that there [was] no genuine issue of material fact and such claims [were] derivative in nature and [appellants] lack standing to assert them." These parties were also entitled to summary judgment "on the additional basis that there [was] no genuine issue of material fact and such claims [were] barred by res judicata and collateral estoppel." The court further found that Smiley and SIC were entitled to summary judgment on the fraud claim because there were "no genuine issues of material fact," and additionally, appellants "failed to meet proof with proof to show that Smiley or SIC made false representations of fact."

The circuit court further denied the motion for summary judgment filed by J.B. Hunt, LLC, TCH, and Holdings, as a party to the claim for conversion-of-membership interest, because the motion, which incorporated the motions for summary judgment filed by the other defendants, was untimely. The court, however, stated that pursuant to Arkansas Rule of Civil Procedure 12(h)(3), all of appellants' claims against them were dismissed with prejudice for lack of subject-matter jurisdiction.[2]

### III. *First Issue on Appeal: Lack of Standing*

Appellants argue that the circuit court erred in finding that their claims for (1) fraud by Lax, Vaughan, Smiley, and SIC; (2) breach of duty to disclose company information by

---

[2]While the circuit court dismissed claims against Homestead Homes, LLC, as well, the complaint did not allege a claim against Homestead.

SLIP OPINION

Smiley, SIC, Sorrell, and Johnson; (3) conversion of membership interest[3] by Smiley, SIC, Lax, and Vaughan, and Holdings; and (4) breach of contract by J.B. Hunt, LLC, and TCH, were derivative claims on behalf of BioBased that appellants lacked standing to bring, rather than direct claims for injuries in their individual capacities, which they could properly bring. In their briefs, appellees contend that appellants' claims are derivative because appellants are suing for the injury sustained when they were deprived of their membership interest in BioBased, and that the bankruptcy deprived all members of BioBased of their membership interests in BioBased.

We are guided by our standard on reviewing an award of summary judgment. A motion for summary judgment should be granted when, in light of the pleadings and other documents before the circuit court, there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ark. R. Civ. P. 56(c)(2) (2013). When reviewing whether a motion for summary judgment should have been granted, this court determines whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Bomar v. Moser*, 369 Ark. 123, 127, 251 S.W.3d 234, 239 (2007). The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Id.*, 251 S.W.3d at 239. All proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Id.*, 251 S.W.3d at 239. We recognize

---

[3]While Holdings was also named in this count, Holdings was dismissed from the lawsuit pursuant to Rule 12(h)(3) of the Arkansas Rule of Civil Procedure.

SLIP OPINION

a "shifting burden" in summary-judgment motions, in that while the moving party has the burden of proving that it is entitled to summary judgment, once it has done so, the burden then shifts to the nonmoving party to show that material questions of fact remain. *Id.* at 127-28, 251 S.W.3d at 239. However, summary judgment is not proper where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ. *Id.* at 128, 251 S.W.3d at 239. The object of summary-judgment proceedings is not to try the issues, but to determine if there are any issues to be tried, and if there is any doubt whatsoever, the motion should be denied. *Id.*, 251 S.W.3d at 239.

A shareholder may bring a derivative action on behalf of a corporation to enforce a right of the corporation when the corporation has failed to do so. Ark. R. Civ. P. 23.1 (2013). In order for a shareholder to bring an individual cause of action against a third party, however, the shareholder must be injured for a wrong directly or independently of the corporation. *Bomar*, 369 Ark. at 128, 251 S.W.3d at 239. Individual stockholders do not have standing to sue in their individual capacities for injuries allegedly suffered primarily by the corporation and its shareholders. *Id.*, 251 S.W.3d at 239. Direct suits brought by a shareholder are appropriate only when the shareholder asserts an injury that is distinct and separate from the harm caused to the corporation. *Id.*, 251 S.W.3d at 239.

## A. Fraud

In their third amended complaint, after incorporating the preceding paragraphs of their complaint by reference, appellants alleged as to Lax, Vaughan, Smiley, and SIC that when it

SLIP OPINION

was recommended that Smiley be brought in to BioBased as a consultant, these appellees "represented him to be neutral and objective and interested in the success of BioBased as a whole" even though these appellees "knew these representations to be false," and that they "sent Smiley to BioBased for the express purpose of furthering their interests alone." Appellants alleged that the purpose of the representations were to induce Tom Muccio, as BioBased's CEO, to retain him as a consultant for BioBased, and that when he was retained in reliance on these representations, Smiley acted contrary to these representations to appellants' detriment, and they "intentionally pursued the course of conduct" for the purpose of causing damage to appellants. Appellants alleged that the fraud resulted in Tom Muccio "being replaced by Smiley as BioBased's CEO, which, in addition to the lost wages suffered by Tom, prevented [appellants] from being able to oppose [Johnelle] Hunt's takeover of BioBased in the bankruptcy proceedings."

On appeal, appellants challenge the court's ruling that their fraud claim was derivative rather than direct. Appellants contend that a shareholder alleges a direct injury when he has been induced to part with his stock for a sum less than its true value by reason of false and fraudulent representations of others. Appellants argue that through false representations, they were induced to vote in favor of BioBased's Chapter 11 bankruptcy, thereby relinquishing their membership interests in the company. They contend that they voted in favor of filing for bankruptcy because Smiley falsely represented that BioBased was likely to have checks bounce in the immediate future, making bankruptcy appear unavoidable, and that they forfeited their membership interests without proper consideration. Appellants assert that this

SLIP OPINION

fraud was part of a conspiracy to drive appellants out of BioBased and that "[s]uch minority oppression is a direct injury." Appellants assert that BioBased stock is the individual property of the shareholder, and when a direct fraud has been perpetrated on a shareholder, he has a right of recovery. Appellants contend that they were conspired against, defrauded, and that company information was withheld from them so that their injury was distinct from that of BioBased or other shareholders.

Fraud is a cause of action that may be brought individually or as a derivative suit, depending on the allegations. *Golden Tee, Inc. v. Venture Golf Sch., Inc.*, 333 Ark. 253, 266, 969 S.W.2d 625, 632 (1998). If a plaintiff alleges fraud in the inducement to enter into a partnership agreement, then the claim is generally individual in nature, but if the plaintiff alleges fraudulent actions that primarily harm the partnership, then the action must be pleaded as a derivative suit. *Id.*, 969 S.W.2d at 632. To prove fraud, a plaintiff must prove five elements: (1) that the defendant made a false representation of material fact; (2) that the defendant knew that the representation was false or that there was insufficient evidence upon which to make the representation; (3) that the defendant intended to induce action or inaction by the plaintiff in reliance upon the representation; (4) that the plaintiff justifiably relied on the representation; and (5) that the plaintiff suffered damage as a result of the false representation. *Id.*, 969 S.W.2d at 632.

We hold that appellants' claims are direct, not derivative. Appellants allege that, through a series of misrepresentations, including the misrepresentations made about Smiley as a business consultant, misrepresentations concerning the need to place BioBased into

10

bankruptcy, and the failure to disclose information regarding BioBased, appellants suffered a direct injury resulting in the loss of their ownership interest in BioBased. These claims sound in fraud in the inducement and thus are not fraudulent actions that harmed only BioBased; rather, appellants were harmed individually. *See Golden Tee*, *supra*. Thus, appellants had standing to assert them. Accordingly, we reverse the circuit court's ruling on this point.

### B. Breach of Duty to Disclose Company Information

In their complaint, after incorporating their previous allegations, appellants further alleged as to Smiley, SIC, Johnson, and Sorrell, that as managers, officers, and board members of BioBased, they had a duty to provide "true and full information of all things affecting the members to any member," and that before and after BioBased filed for bankruptcy, these appellees breached this duty and withheld company information from appellants. Specifically, appellants allege that these appellees "refused to provide documents concerning BioBased's financial condition and information concerning BioBased's negotiations" with Johnelle Hunt and Holdings.

On appeal, appellants argue that the denial of a statutory right to company information is an individual injury and thus a direct action. Appellants assert that they were deprived of information and that denying appellants "full and true information of the company's affairs assisted appellees in the fraud they perpetrated" and prevented appellants "from knowing enough to exercise their rights under the operating agreement much earlier."

The Small Business Entity Tax Pass Through Act provides in part as follows:

Members, if the management of the limited liability company is vested in the

SLIP OPINION

members, or managers, if management of the limited liability company is vested in managers, shall render, to the extent the circumstances render it just and reasonable, true and full information of all things affecting the members to any member and to the legal representative of any deceased member or of any member under legal disability.

Ark. Code Ann. § 4-32-405(c) (Repl. 2001). Further, that Act provides as follows:

A member or manager shall not be liable, responsible, or accountable in damages or otherwise to the limited liability company or to the members of the limited liability company for any action taken or failure to act on behalf of the limited liability company unless the act or omission constitutes gross negligence or willful misconduct.

Ark. Code Ann. § 4-32-402(1) (Repl. 2001).

We hold that this statutory right of members to access of "true and full information of all things affecting the members" constitutes an individual claim running to the individual member, not to the company itself. Further, the Act anticipates that a manager may be held liable to a member of the limited liability company for any failure to act on behalf of the limited liability company if the omission constitutes gross negligence or willful misconduct. Thus, we hold that appellants had standing to bring this claim and reverse the circuit court on this point.

### C. Conversion of Membership Interest

In their complaint, after incorporating their previous allegations, appellants further alleged that Smiley, SIC, Lax, Vaughan, and Holdings "participated in cancelling and/or transferring [appellants'] membership interests in BioBased to Holdings in contravention of the Operating Agreement," thereby exercising "dominion over [appellants'] property in violation of [appellants'] rights to that property."

On appeal, appellants argue that, "through fraudulent actions described above," these

12

SLIP OPINION

appellees converted appellants' membership interests in BioBased. Appellants assert that the outstanding stock of a corporation is the individual property of the shareholders, not of the corporation, and the corporation has no interest in it or dealings among shareholders with respect to their stock. Appellants contend that they have alleged an individual injury, not an injury to BioBased, "as explained more fully in connection with appellants' fraud claim."

Conversion is a common-law tort action for the wrongful possession or disposition of another's property. *McQuillan v. Mercedes-Benz Credit Corp.*, 331 Ark. 242, 247, 961 S.W.2d 729, 732 (1998). To establish liability for the tort of conversion, a plaintiff must prove that the defendant wrongfully committed a distinct act of dominion over the property of another, which is a denial of, or is inconsistent with, the owner's rights. *Id.*, 961 S.W.2d at 732.

We conclude that this claim is direct, not derivative. Appellants' allegations amount to a claim that these appellees exercised dominion over appellants' membership interests in BioBased and that those interests were converted by these appellees through their fraudulent misrepresentations. Given our holding that the fraud claim was a direct claim, we similarly conclude that the conversion claim is a direct claim.

### D. Breach of Contract

Despite appellants' argument under this point that their claim for breach of contract was direct, not derivative, that was not the basis of the circuit court's ruling. Rather, their claim for breach of contract against J.B. Hunt, LLC, and TCH, was dismissed with prejudice for lack of subject-matter jurisdiction. That issue will be addressed below.

### IV. *Second Issue on Appeal: Fraud Claim Against Smiley and SIC*

SLIP OPINION

Appellants' argument addresses the circuit court's decision to dismiss appellants' fraud claim against Smiley and SIC after finding that appellants "failed to meet proof with proof to show that Smiley or SIC made false representations of fact." We have previously stated our standard of review and the elements of fraud. On appeal, appellants argue that the "fraud at issue was committed as part of a conspiracy and a fraudulent scheme" and that Smiley and SIC are liable for the "fraudulent misrepresentations and actions of their co-conspirators," including Lax and Vaughan. Appellants note that the circuit court "ruled there was sufficient evidence of fraud and conspiracy to defeat summary judgment" against Lax and Vaughan, and that the circuit court did not find that Smiley and SIC "did not participate in the conspiracy and the fraudulent scheme." They further assert that they alleged that Smiley and SIC "made fraudulent representations to induce [appellants] to vote in favor of BioBased's bankruptcy," and that appellants "produced sufficient evidence of this allegation to create a genuine issue of material fact as to Smiley's and SIC's liability."

Under the fraud count in their complaint, appellants alleged that Lax and Vaughan represented Smiley to be neutral and objective, that these representations were false, that Tom Muccio retained Smiley as a consultant in reliance on these representations, that Smiley acted contrary to these representations, and that "the fraud resulted in [Tom Muccio] being replaced by Smiley as BioBased's CEO." The circuit court found that Lax, Vaughan, and their law firm were not entitled to summary judgment on the conspiracy claim and that appellants had met their burden of showing that there remained material facts to be decided on their fraud claim as to Lax and Vaughan. The elements of fraud can be established by the actions of

14

several persons in a fraudulent scheme or transaction, each person being responsible for the acts of the others and thereby liable. Howard W. Brill, *Arkansas Law of Damages* § 33:8 (5th ed. 2004). In his deposition testimony, Tom Muccio asserted that Smiley conspired to remove Muccio and take control of the company. Minutes of a meeting held December 30, 2008, show that Smiley told members that Tom Muccio was "not equipped to handle his position" and his "personnel skills [were] not good." At that meeting, Tom Muccio's authority as CEO was removed, he was ordered to report to Smiley, and Smiley was installed as Chairman. Given this evidence, we conclude that there remain genuine issues of material fact.

Further, we may appropriately consider other allegations contained in the complaint, as these allegations were incorporated by reference into the fraud count. Rule 8(f) of the Arkansas Rules of Civil Procedure provides that "[a]ll pleadings shall be liberally construed so as to do substantial justice." Further, we note that under Rule 10(b) of our rules, "[a]ll averments of claim . . . shall be made in numbered paragraphs." We further note, however, that under Rule 10(c), "[s]tatements in a pleading may be adopted by reference in a different part of the same pleading." Here, the fraud count incorporated by reference all preceding paragraphs in the complaint. Thus, we may appropriately consider all allegations raised in the complaint in the interest of liberally construing the pleadings to do substantial justice.

In appellants' conspiracy count in the complaint, appellants alleged that Smiley falsely represented the reasons for entering into bankruptcy and withheld documents and information relating to BioBased. These, too, create genuine issues of material fact. Accordingly, we reverse the circuit court on this point.

SLIP OPINION

V. *Third Issue on Appeal: Dismissal for Lack of Subject-Matter Jurisdiction*

In its order, while denying as untimely their motion for summary judgment, the circuit court nevertheless dismissed with prejudice, pursuant to Arkansas Rule of Civil Procedure 12(h)(3), for lack of subject-matter jurisdiction appellant's claims against J.B. Hunt, LLC, and TCH, who were named as defendants to the complaint's breach-of-contract claim, and Holdings, named as a defendant to the claim for conversion-of-membership interest. Rule 12(h)(3) provides in part that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." The circuit court's apparent premise was that because appellants lacked standing to bring a direct claim, and because the claims were barred by res judicata and collateral estoppel, the court lacked subject-matter jurisdiction. Appellants assert that the circuit court erred in so concluding. We agree.

A lack of standing does not deprive a circuit court of subject-matter jurisdiction. *Chubb Lloyds Ins. Co. v. Miller Cnty. Circuit Court*, 2010 Ark. 119, at 6, 361 S.W.3d 809, 812. Further, res judicata is a defense and not a matter of subject-matter jurisdiction. *Willis v. Crumbly*, 368 Ark. 5, at 8 n.2, 242 S.W.3d 600, 602 n.2 (2006). While appellees argue that we should follow *Hames v. Cravens*, 332 Ark. 437, 966 S.W.2d 244 (1998), and hold that the claims were properly dismissed because the shareholders lacked standing to bring derivative claims, we specifically held in *Chubb Lloyds Ins. Co.* that the holding in *Hames* was based on the suit being brought in the wrong court—circuit court rather than chancery court. *Chubb Lloyds Ins. Co.*, 2010 Ark. 119, at 8, 361 S.W.3d at 814. Thus, *Hames* is not controlling.

16

SLIP OPINION

Accordingly, we reverse the circuit court's decision on this point.

## VI. *Fourth Issue on Appeal: Res judicata and Collateral Estoppel*

Appellants challenge the circuit court's conclusion that claims against Lax, Vaughan, their law firm, and claims against Smiley, SIC, Sorrell, and Johnson, were barred by res judicata and collateral estoppel. Appellants argue that the circuit court erred in so finding because their state-law claims were not addressed, nor could they be addressed within BioBased's bankruptcy. In their briefs, appellees argue that appellants are attempting to relitigate matters that were disposed of in bankruptcy court or to litigate matters that could have been litigated in bankruptcy court.

The concept of res judicata has two facets, one being claim preclusion and the other issue preclusion. *Crockett v. C.A.G. Invs., Inc.*, 2011 Ark. 208, at 8, 381 S.W.3d 793, 799. Under claim preclusion, a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim. *Id.*, 381 S.W.3d at 799. Claim preclusion bars not only the relitigation of claims which were actually litigated in the first suit, but also those which could have been litigated. *Id.* at 9–10, 381 S.W.3d at 799. Where a case is based on the same events as the subject matter of a previous lawsuit, claim preclusion will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *Id.* at 10, 381 S.W.3d at 799. Under issue preclusion, or collateral estoppel, a decision by a court of competent jurisdiction on matters that were at issue and that were directly and necessarily adjudicated, bars any further litigation on those issues by the plaintiff or his privies against the defendant or his

17

SLIP OPINION

privies on the same issue. *Id.*, 344 S.W.3d at 70.

In *Stern v. Marshall*, ___U.S. ___, 131 S. Ct. 2594 (2011), the United States Supreme Court held that a bankruptcy court lacks constitutional authority to enter a final judgment when the counterclaim does not "stem[ ] from the bankruptcy itself or would necessarily be resolved in the claims allowance process," ___U.S. at ___ ,131 S. Ct. at 2618, and a bankruptcy court does not have "constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim," ___U.S. at ___ , 131 S. Ct. at 2620. Here, appellants' causes of action are asserting state-law claims that were not claims against the bankruptcy estate of BioBased; rather they were claims against the managers of BioBased, as well as attorneys who allegedly participated in fraud and conversion with these managers. Moreover, these claims were not litigated in BioBased's bankruptcy. Accordingly, we conclude that the bankruptcy proceeding did not have a res judicata or collateral estoppel effect on these state claims, and we reverse the circuit court on this issue.

Reversed and remanded.

CORBIN, J., and Special Justice DAVID M. HARGIS concur.

HANNAH, C.J., and DANIELSON, J., concur in part, dissent in part.

GOODSON, J., not participating.

**DONALD L CORBIN, Justice, concurring.** While I agree with the result reached in the majority's opinion, I reach that result on the basis of the view expressed in the dissenting opinion I joined in *Hames v. Cravens*, 332 Ark. 437, 966 S.W.2d 244 (1998). The gist of the

view expressed therein is that it makes little sense to engage in a derivative—direct analysis for minority shareholders of a closely-held corporation asserting a "freeze-out" by the majority shareholders. In such a situation, the traditional purposes of requiring a direct action are not served. One of the many examples noted in that dissent was, *Crosby v. Beam*, 548 N.E.2d 217 (1989), where the Ohio Supreme Court observed that "if the minority shareholders in a close corporation were forced to sue on behalf of the corporation, then any recovery would go to the corporation that remained under the control of the majority." *Hames*, 332 Ark. at 448, 966 S.W.2d at 250 (Newbern, J., dissenting).

**DAVID M. HARGIS, Special Justice, concurring.** I join the majority opinion and submit this separate concurring opinion to express my concerns about the use of summary-judgment motions in Arkansas courts. As a trial lawyer who has tried cases for over forty years as a prosecutor, a defense lawyer, and a plaintiff's lawyer, I firmly believe that the subject of summary-judgment motions is the most important topic in modern trial practice. The motion for summary judgment has evolved into the primary device through which accountability before a jury can be commonly circumvented. This case is an excellent example of the modern strategies in these *summary trials by affidavit*.[1] I suggest that Arkansas jurisprudence on

---

[1]The use of arbitration clauses in all the adhesion contracts involved in modern life is not in issue here, but, when the vanishing right to a jury trial is considered, the motion for summary judgment and contractually required arbitration are undoubtedly the primary causative forces. The use over the past several decades of *statutory* schemes to destroy, or even dilute, a *constitutional right* is perplexing to any proponent of jury trials. "Public policy" considerations (for instance, the use of a statute to nullify a constitutional provision) are appropriate when considering contract terms. 15 Arthur L. Corbin, *Corbin on Contracts* § 89 (2003 & Supp. 2012).

these motions should be carefully reexamined, and the use of these motions should be limited in future cases.

From the inception of the motion for summary judgment, its potential for diminishing the constitutional right to a jury trial has been evident. Although its origin as a debt-collection procedure *for plaintiffs* extends back even to the seventeenth century, the modern motion for summary judgment begins with the 1938 version of the Federal Rules of Civil Procedure. Soon thereafter, the Fifth Circuit Court of Appeals perceived the collision of this rule with the constitutional right to a jury trial, describing the motion as "a catch penny contrivance to take unwary litigants into its toils and deprive them of a trial." *Whitaker v. Coleman*, 115 F.2d 305, 307 (1940). Later, the Second Circuit Court of Appeals emphasized that a motion for summary judgment "is a drastic device since its prophylactic function, when exercised, cuts off a party's right to present his case to the jury." *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975).[2]

The use of summary-judgment motions in complex cases has become a formulaic bulwark against the constitutional right to a jury. When the undisputed background facts of this case are assimilated, it is readily apparent to an experienced trial lawyer that this observation holds true here. In this case, it is generally agreed that the discovery phase of this litigation involved over one million documents or pages of documents. Forty-five to fifty days

---

[2]For an exceptional, objective, and thorough study of the advantages and disadvantages of, and the appropriate and inappropriate use of summary-judgment motions, see Schwarzer, Hirsch & Barrans, *The Analysis and Decision of Summary Judgment Motions, A Monograph on Rule 56 of the Federal Rules of Civil Procedure* (Federal Judicial Center 1991).

SLIP OPINION

were spent in depositions, with fifteen days spent just deposing two of the plaintiffs. There were five separate law firms, each using multiple lawyers, with "over a dozen defendants." All parties estimated the time required for a jury trial would consume at least four weeks and would probably exhaust six weeks. Then, six days before the jury trial was to commence, all issues were resolved in the appellees' favor in a five-hour hearing—and the right to a jury trial was once again garroted. This is all formulaic, a template laid across every case of any complexity, size, or importance—and whether or not it is intended, it constitutes a demonstrable, and, therefore, in reality, a clear exploitation of economic advantage.

Sometimes these templates resort to specious arguments—hyperbolic contentions founded on dubious authorities—because they exhaust the plaintiffs' resources, which are almost always a fraction of the resources available to the defendants. Whether some or all of appellees' arguments are specious perhaps need not be explored, as the majority has determined those arguments are at least without merit. Nevertheless, that those arguments might also be frivolous illustrates the necessity for a judicial reevaluation of the rules governing motions for summary judgment, motions which so often collide with the constitutional right to a jury trial. Serious and structured evaluation of the substantive merit, under Rule 11 of the Arkansas Rules of Civil Procedure, of all summary-judgment motions might inhibit much of the gamesmanship involved with these motions.

For several reasons evolving over the past several decades, the motion for summary judgment has become "a" and perhaps "the" primary barrier to the constitutional right to a jury trial. Two of the most influential reasons for the increased deployment of motions for

summary judgment are (1) the appellate courts have changed their jurisprudence to provide that motions for summary judgment "should no longer be considered a drastic remedy"; and (2) an appropriate standard for assessing the propriety of a motion for summary judgment is said to be "whether reasonable minds might differ."

*A Drastic Remedy.* In the past ten or fifteen years, it has become commonplace in the Arkansas Supreme Court and the Arkansas Court of Appeals to recite that "[s]ummary judgment is no longer considered a drastic remedy, but is one of the tools in a trial court's efficiency arsenal." *See, e.g., Smith v. Rogers Group, Inc.*, 348 Ark. 241, 72 S.W.3d 450 (2002); *McWilliams v. Schmidt*, 76 Ark. App. 173, 61 S.W.3d 898 (2001). One might still believe the loss of a right to trial by jury is a drastic movement in the law, and perhaps some historical caution should be provided to the trial judges across this state who take up these *summary trials by affidavit.*

*Whether Reasonable Minds Might Differ.* This standard has been declared in numerous cases. *See, e.g., Thomas v. Stewart*, 347 Ark. 33, 60 S.W.3d 415 (2001) ("whether reasonable minds might differ"); *City of Dover v. Barton*, 342 Ark. 521, 29 S.W.3d 698 (2000) ("reasonable men might reach different conclusions"). What is and what is not "reasonable" is a classical issue required to be determined by a jury. *See, e.g., McMickle v. Griffin*, 369 Ark. 318, 254 S.W.3d 729 (2007) (what constitutes "negligence"); *Saine v. Comcast Cablevision of Ark., Inc.*, 354 Ark. 492, 126 S.W.3d 339 (2003) (negligence issue for jury); *SeaChange Intern, Inc. v. Putterman*, 79 Ark. App. 223, 86 S.W.3d 25 (2002)(whether a civil conspiracy exists presents a genuine question of material fact). For a trial judge to evaluate whether reasonable

minds might differ is nothing less that determining what is or is not reasonable. This is a question historically submitted to a jury[3]—and this, therefore, should be a jury question in the State of Arkansas.

The right to a jury trial is what hangs in the balance, and when a formulaic attack of the type demonstrated in this case is before a trial court, the same caution that marked the introduction of the modern motion for summary judgment needs to be mandated—lest our process be corrupted by the economic exploitation which gives life to the process involved here. The right to trial by jury is a constitutional right, and it has never changed. The modern law in all areas but summary-judgment analysis has always placed this constitutional right at the apex, even when issues beyond determining facts are considered. The right to a jury trial takes precedence over remedies available in equity, according to Justice Hugo Black and the United States Supreme Court in the 1960s. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962); *Beacon Theatres v. Westover*, 359 U.S. 500 (1959). The serial decisions of the United States Supreme Court over the past twenty years, those from which current rules regarding punitive damages have been reexamined, eventually recognized the imposition of punitive damages as an appropriate jury function, even though that function is broader than the mere determination of factual disputes. *See, e.g.*, *Pacific Mut. Life Ins. Co. v. Islip*, 499 U.S. 1 (1991); *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443 (1993); *BMW of N. Am., Inc. v. Gore*,

---

[3]The essential nature and ancient recognition of the importance of the right to a jury trial, that its history extends back one thousand years, and more, that it pre-dates, before being adopted into, all of the English common law, see Forsyth, History of Trial by Jury (Frederick D. Linn & Company 1875).

SLIP OPINION

517 U.S. 559 (1996); *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2002); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003); and *Philip Morris USA v. Williams*, 549 U.S. 346, (2007). When the issue of punitive damages was considered in assessing Arkansas practice and compliance with constitutional requirements in *Union Pacific Railroad Company v. Barber*, 356 Ark. 268, 307, 49 S.W.3d 325, 351 (2004), a useful tool explaining the jury function was declared: "We will not substitute our judgment for that of the jury when there is basis in the evidence for the punitive award." This perhaps should also be declared as a standard for evaluating motions for summary judgment. If a basis in the potential evidence can be shown responsive to a motion for summary judgment, and evidencing any issue challenged by the motion for summary judgment, the motion should be denied. The right to a jury trial should not be diluted, nor should it be sacrificed to the games lawyers play.

**PAUL E. DANIELSON, Justice, concurring in part, dissenting in part.** While my analysis on some of the issues may slightly differ, I too concur with the result reached by the majority; however, because I would affirm the grant of summary judgment on the Muccios' claim for fraud as against Smiley and SIC, I respectfully dissent on that issue. I do so because to prove fraud, one must show (1) a false representation of material fact; (2) knowledge that the representation is false or that there is insufficient evidence on which to make the representation; (3) intent to induce action or inaction in reliance on the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance. *See Bullock v. Barnes*, 366 Ark. 444, 236 S.W.3d 498 (2006).

My review of the third amended complaint reveals that the Muccios' allegation of fraud was based solely on a representation by the named defendants that Smiley was neutral and objective; yet, none of the evidence cited to by the Muccios demonstrated that either Smiley or SIC ever made a representation of neutrality and objectivity. For example, none of the emails cited by the Muccios appear to provide evidence that Smiley and SIC represented to Tom that Smiley was neutral and objective. Moreover, even Tom's affidavit merely states that

> Hunt, Phillips, Trumbo, and Lax each, on one or more occasions, sometimes verbally and sometimes by email, urged me to agree to bring in Walter Smiley as a business consultant. They represented that his purpose would be to improve the processes of the company and improve its financial condition and increase its value for the investor. . . . Smiley represented to me his role and his mission would be improving the profitability and increasing value of the company in order to benefit the investors and that he had substantial experience in doing that very thing for other companies.

While the complaint's count of fraud did incorporate "the preceding paragraphs herein by reference," those facts and allegations do not remedy the Muccios' lack of proof as to Smiley and SIC. Our rules of civil procedure require that claims of fraud be pled with specificity. *See* Ark. R. Civ. P. 9(b) (2011); *see also DePriest v. AstraZeneca Pharms., L.P.*, 2009 Ark. 547, 351 S.W.3d 168. In this case, the complaint specifically pled that the fraud claim was based solely on a representation by the named defendants that Smiley was neutral and objective. As set forth above, it is my opinion that the Muccios failed to meet proof with proof that Smiley and SIC made such a representation. Viewing the evidence in the light most favorable to the Muccios, I cannot say that the circuit court erred in granting summary judgment because no material issues of fact exist as to the Muccios' claim that Smiley and SIC

represented to them that Smiley was neutral and objective. For these reasons, I respectfully concur in part and dissent in part.

HANNAH, C.J., joins.

*Knight Law Firm, PLC*, by: *K. Vaughn Knight* and *Mason J. Wann*; *Derrick Davidson, P.A.*, by: *Derrick Davidson*; and *Johanson & Fairless, L.L.P.*, by: *Mike Johanson*, for appellants.

*Barber, McCaskill, Jones & Hale, P.A.*, by: *Robert L. Henry, III*, and *R. Kenny McCulloch*; *Davis, Clark, Butt, Carithers & Taylor, PLC*, by: *Constance G. Clark*, *William Jackson Butt, II*, and *Joshua D. McFadden*; *Shemin Law Firm*, by: *Kennerth R. Shemin*; and *Cullen & Co., PLLC*, by: *Tim J. Cullen*, for appellees.